STEVEN D. MANN *et al.*, Indiv. and on Behalf of a Class of Similarly Situated Persons, Plaintiffs-Appellants, v. KEMPER FINANCIAL COMPANIES, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—90—0282

Opinion filed December 30, 1992.—Rehearing denied July 21, 1993.

Richard J. Prendergast, of Richard J. Prendergast, Ltd., Thomas J. Moore and Jane F. Anderson, both of McCarthy, Duffy, Neidhart & Snakard, Kevin M. Forde and Katrina Veerhusen, both of Kevin M. Forde, Ltd., and James J. Moylan, of James J. Moylan & Associates, all of Chicago, for appellants.

Joan M. Hall, J. Kevin McCall, Sidney I. Schenkier, and Douglas A. Graham, all of Jenner & Block, of Chicago, for appellees Kemper Financial Companies, Inc., and Kemper Financial Services, Inc.

JUSTICE CERDA delivered the opinion of the court:

Plaintiffs, Steven D. Mann and Kenneth L. Cunniff, individually and on behalf of a class of similarly situated persons, appeal from the dismissal of their consolidated first amended class action complaint alleging fraud in connection with the management of plaintiffs' mutual fund investments. Plaintiffs argue on appeal that they had standing to sue directly for their injuries and that they did not have to bring a shareholder's derivative action.

Plaintiffs alleged the following in their complaint. The action was brought on behalf of all persons who invested in the Kemper Option Income Fund (KOIF) and the Kemper Investment Portfolios Option Income Fund (IPI-OP) from January 1985 to the present. KOIF and

IPI-OP (referred to collectively as the mutual funds) were public mutual funds managed by defendant Kemper Financial Services, Inc. (KFS), and sponsored by defendant Kemper Financial Companies, Inc. (KFC) (referred to collectively as the corporate defendants). KOIF's prospectus dated February 1, 1987, stated that the mutual fund was organized as a business trust but that, effective January 31, 1986, pursuant to a reorganization, it succeeded to the assets of Kemper Option Income Fund, Inc., a Maryland corporation. IPI-OP's prospectus dated November 15, 1986, stated that Investment Portfolios, Inc. (IPI), was a mutual fund, a corporation, and a Massachusetts business trust. IPI offered multiple portfolios, including IPI-OP.

In managing and marketing the mutual funds, KFC and KFS breached duties by failing to maintain and enforce internal trading controls, by commingling financial futures transactions for public and in-house funds, by improperly allocating financial futures trades after the close of trading, by diverting profitable financial futures trades to a Kemper employee profit sharing plan, and by allocating unprofitable financial future trades to the mutual funds, while they were engaged in a pattern of speculative financial futures trading prohibited by the mutual funds' prospectuses.

Plaintiffs further alleged that Mann invested in the KOIF mutual fund on April 1, 1986, and purchased additional shares subsequently. Mann first learned of the corporate defendants' and defendant Thomas Richards' wrongdoing in September 1988. Cunniff invested in the IPI-OP mutual fund on May 7, 1987, and purchased additional shares monthly until March 17, 1988, when he sold his shares. Cunniff first learned of defendants' wrongdoing in October 1988.

KFC was the holding company for KFS. KFC sponsored the mutual funds. KFC controlled and was a "statutory affiliate" of the mutual funds and KFS. KFS served as the investment advisor and underwriter of the mutual funds. KFS was registered as an investment advisor under the Investment Advisers Act of 1940 (15 U.S.C. §80b–1 (1988)) and was also registered in Illinois. Richards was an officer, employee, and agent of KFS and the portfolio manager of the mutual funds. Richards also managed a portion of the KFS employee profit sharing plan (the profit sharing plan). The corporate defendants shared an agency relationship with respect to their sponsorship, marketing, and management of the mutual funds. Richards shared an agency relationship with KFC in connection with the mutual funds.

The mutual funds' portfolios consisted primarily of dividend paying common stocks whose options were traded on national securities exchanges. The objective of the mutual funds was to provide high cur-

rent return by investing in common stocks and by writing and selling options on the stocks held to produce additional income. Richards was responsible for managing and maintaining the stock portfolios and for designing strategies to produce additional income. Most of the profit sharing plan's assets were placed in relatively conservative investments, but the portion of the plan that Richards was authorized to trade was intended for speculation in Standard & Poor's 500 Stock Index Futures Contracts (S&P 500). Richards spent the majority of his time trading almost exclusively in speculative financial futures and financial index options, which he traded in commingled and unallocated lots for various Kemper funds, including IPI-OP, KOIF, and the profit sharing plan.

The internal compliance procedures required that a portfolio manager complete an order ticket before making a S&P 500 trade; the ticket was to include the name of the Kemper funds on whose behalf the trade was to be executed. After completing the order ticket, the procedures also required that the portfolio manager explain the trade to one of the other portfolio managers or assistant managers and obtain the other's initials. Only then could the order be executed. The order was to be time stamped when it was placed. After the executing broker confirmed that the order had been filled, the procedures required that the fill portion of the trade ticket be completed.

Plaintiffs further alleged that in violation of these procedures, Richards regularly failed to complete his order tickets before he executed trades. After the close of trading, Richards wrote his order tickets and arbitrarily allocated the trades among the various funds. He then telephoned the executing brokers to tell them the names of the funds for which the trades were made and obtained the required signatures without explaining the trades. Richards thereby used the financial resources of the mutual funds to finance his trading for the profit sharing plan. Richards improperly commingled and allocated trades. If the market went against one of the trades, Richards allocated it to the billion dollar mutual funds until the trade could be more favorably closed out.

Plaintiffs further alleged that the prospectuses, which were prepared by the corporate defendants, stated that the mutual funds would not engage in speculative transactions. The corporate defendants failed to properly supervise Richards and failed to enforce federally mandated internal trading controls. Richards persuaded the corporate defendants to exempt him from the portfolio manager peer review system that would have subjected his conduct to scrutiny. Beginning in September 1987, Richards' misconduct was repeatedly re-

ported to the corporate defendants' senior management but no action was taken to stop Richards. Prior to September 1987, the corporate defendants, as "control persons" and "principals" (within the meaning of 15 U.S.C. §§77o, 80a–2(a)(9) (1988)) of Richards, knew or in the exercise of reasonable care should have known, of Richards' wrongdoing. Richards' actions benefited the corporate defendants by enhancing the value of their profit sharing plan. As a result, Richards' portion of the profit sharing plan obtained a 400% rate of return while the mutual funds lost tens of millions of dollars. Richards and the corporate defendants concealed their misconduct from plaintiffs.

Count I alleged common law fraud based upon the above allegations. In marketing the mutual funds, the corporate defendants repeatedly made material representations in the prospectuses that the funds did not engage in speculative trading in financial futures contracts. The corporate defendants knew that the representations were false. The corporate defendants and Richards concealed from plaintiffs their speculative trading, commingling of trades, and misallocation of trades. The misrepresentations and subsequent concealment were intended to, and did, induce plaintiffs to invest in the mutual funds. Plaintiffs would not have invested in the mutual funds or retained their investments had they known of the speculation. The reliance was reasonable because the representations were contained in the prospectuses. Plaintiffs were injured as a result of the reliance.

Count II alleged breach of fiduciary duty. As investors, plaintiffs put their entire trust and confidence in the good names of the corporate defendants and allowed them and Richards to exercise complete control over their investments. Plaintiffs had no control over which securities were purchased or how they were purchased. Plaintiffs trusted the corporate defendants and their agents to act prudently in investing their money. The corporate defendants encouraged and promoted this trust and confidence through their advertisements, solicitations, and prospectuses. The corporate defendants and Richards exercised complete domination, superiority, and control in their relationship with plaintiffs. The corporate defendants and Richards owed plaintiffs the highest duty of care, undivided loyalty, fairness, and full disclosure as fiduciaries. The corporate defendants and Richards breached their fiduciary duties to plaintiffs by: (a) violating the terms of the prospectuses and speculating in S&P 500 contracts; (b) failing to disclose and concealing the fact that they were violating the terms of the prospectuses by speculating in S&P 500 contracts; (c) commingling and misallocating S&P 500 trades to their advantage

and to plaintiffs' financial detriment; and (d) failing to disclose and concealing the fact that they were commingling and misallocating S&P 500 trades.

Count III alleged defendants' violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1991, ch. 121½, par. 261 *et seq.*). The corporate defendants represented in the prospectuses that the mutual funds would not engage in speculative transactions in financial futures contracts, and the corporate defendants intended reliance on the representations. The corporate defendants knew that the representations were false, and all defendants concealed from plaintiffs the scheme to speculate, to commingle, and to misallocate trades. The corporate defendants' false representations and all defendants' omissions and concealments related to material facts and occurred in the conduct of trade and commerce. Defendants' speculative trading and the misallocation and commingling of trades occurred in the conduct of trade and commerce and were concealed from plaintiffs.

Count IV sought an accounting by defendants to plaintiffs for all wrongfully obtained profits and misappropriated funds.

Count V alleged the corporate defendants' violation of section 11 of the Securities Act of 1933 (15 U.S.C. §77k (1988)) (the Securities Act) and section 24 of the Investment Company Act (15 U.S.C. §80a—24 (1988)) (the ICA). Cunniff purchased IPI-OP shares on May 7, 1987, and first learned of defendants' wrongdoing in October 1988. KFS, as the underwriter, and the corporate defendants, in their capacities as affiliated and control persons of the mutual funds, filed registration statements with the Securities Exchange Commission (SEC) that contained the identical material misrepresentations of the mutual funds' prospectuses. The registration statements were material to the decisions of prospective investors to invest in the mutual funds, and plaintiffs relied on the representations.

Count VI alleged the corporate defendants' violation of section 12(2) of the Securities Act (15 U.S.C. §77l(2) (1988)). Corporate defendants offered and sold securities by means of prospectuses that stated that the mutual funds would not engage in speculative transactions in financial futures contracts. The statements were material to prospective investors' decisions to invest in the mutual funds, and plaintiffs relied on them in deciding to invest. Mann purchased shares in the KOIF mutual fund on April 1, 1986, and first learned of the wrongdoing in September 1988. The corporate defendants were liable as sellers of the mutual funds by means of false and misleading prospectuses.

Count VII alleged violation of section 17(j)—1 of the ICA (15 U.S.C. §80a—17(j) (1988)) and SEC Rule 270.17j—1 (17 C.F.R. §270.17j—1 (1992)). Richards violated the ICA and the rule by speculating in, commingling, and wrongfully allocating S&P 500 trades to the profit sharing plan's advantage and to the detriment of the mutual funds. The wrongdoing of Richards, as an affiliated person of KFS, violated the ICA and SEC Rule 270.17j—1. The corporate defendants aided and abetted Richards' violations.

Count VIII alleged that section 36(b) of the ICA (15 U.S.C. §80a—35(b) (1988)) permitted plaintiffs to sue for breach of defendants' breach of fiduciary duties.

Count IX alleged violation of section 37 of the ICA (15 U.S.C. §80a—36 (1988)) based upon Richards' diversion and allocation of profitable trades to the profit sharing plan from the mutual funds.

The corporate defendants moved to dismiss the complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) on the basis that: (1) plaintiffs' claims were derivative and could not be pursued in a class action; (2) plaintiffs' claims failed to allege essential elements; (3) plaintiffs' State law claims failed to allege any duty of the corporate defendants to disclose omitted facts; and (4) plaintiffs' State law claims could not claim the existence of a fiduciary duty between the shareholders of the mutual funds and third parties that contracted with the mutual funds. Richards also filed a motion to dismiss.

The trial court dismissed the complaint with prejudice on the basis that plaintiffs did not allege separate and distinct injuries from other shareholders' injuries and that therefore plaintiffs did not have standing to bring the action individually as opposed to derivatively. Plaintiffs appealed.

Plaintiffs argue the following on appeal. Only individual investors could bring the alleged causes of action, and the mutual funds themselves would not be able to maintain the majority of the causes of action. The causes of action accrued only to the defrauded securities purchaser and not the corporation in which the purchaser was wrongfully induced to invest. Although the general rule is that where the only injury suffered by the shareholders is a diminution in value of their shares resulting from a wrong to the corporation, the corporation rather than the individual shareholders must bring the action, the rule does not apply where the wrongful acts are not only against the corporation but are also violations of a duty owed directly to the shareholders. Plaintiffs also argue that before a particular cause of

action can be considered to be a derivative action, the corporation must have the right to bring the action.

Defendants argue the following. The nature of the injury, rather than the theory of liability, controls in determining whether a cause of action is derivative. A plaintiff may pursue an individual claim only if he can allege an injury separate and distinct from his derivative injury. These rules prevent a double recovery against defendants, and if the corporation has standing to recover for an injury, it makes no sense to allow shareholders a direct claim based on the same injury. Plaintiffs here did not allege unique harm, and the only injury alleged was the loss by the mutual funds. The trial court correctly found that the gravamen of the complaint was a derivative injury because: (1) the only injury alleged was that the mutual funds lost money because of the misallocation and speculation; and (2) the mutual funds, as independent legal entities, suffered the immediate and direct injury alleged by plaintiffs. Plaintiffs failed to plead a separate and distinct injury.

A derivative action consists of two causes of action: one against the directors for failing to sue and the second based upon a right belonging to the corporation. (*Brown v. Tenney* (1988), 125 Ill. 2d 348, 355, 532 N.E.2d 230, 232.) In the derivative suit, the shareholder derives the power to sue directly from the unexercised authority of the corporation. (*Brown*, 125 Ill. 2d at 356, 532 N.E.2d at 233.) The direct beneficiary of a derivative suit is the corporation that initially possessed the right to bring suit. (*Brown*, 125 Ill. 2d at 357, 532 N.E.2d at 233.) The phrase "derivative action" has long been understood to apply only to those actions in which the right claimed by the shareholder is one the corporation could itself have enforced in court. *Daily Income Fund, Inc. v. Fox* (1984), 464 U.S. 523, 529, 78 L. Ed. 2d 645, 651, 104 S. Ct. 831, 835.

The United States Supreme Court has explained that the shareholder standing rule is a long-standing equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment. (*Franchise Tax Board v. Alcan Aluminum Ltd.* (1990), 493 U.S. 331, 336, 107 L. Ed. 2d 696, 704, 110 S. Ct. 661, 665.) There is an exception to the rule allowing a shareholder with a direct and personal interest in a cause to bring suit even if the corporation's rights are also implicated. (*Franchise*, 493 U.S. at 336, 107 L. Ed. 2d at 704, 110 S. Ct. at 665.) The shareholder standing rule is related to the general standing rule that a plaintiff must assert his

own legal rights and interests. *Franchise*, 493 U.S. at 336, 107 L. Ed. 2d at 704, 110 S. Ct. at 665.

The general rule about shareholder standing in Illinois was established in *Zokoych v. Spalding* (1976), 36 Ill. App. 3d 654, 663, 344 N.E.2d 805, which stated that, where there is no showing that plaintiff herself had been injured in any capacity other than in common with her fellow stockholders, the cause of action belongs to the corporation. The court held that the general principle did not apply where the wrongful acts were not only against the corporation but were also violations of a duty owed directly to the shareholder. (*Zokoych*, 36 Ill. App. 3d at 663, 344 N.E.2d at 813.) The court also held that it must be preliminarily determined if the gravamen of the pleadings states injury to plaintiff upon an individual claim as distinguished from an injury that indirectly affects the shareholder or that affects the shareholders as a whole. (*Zokoych*, 36 Ill. App. 3d at 663, 344 N.E.2d at 813.) Because the alleged appropriation of the stock ownership, assets, good will, and customers caused injury both to the corporation and to plaintiff individually, the court found that a direct injury had been alleged, and the cause was allowed. *Zokoych*, 36 Ill. App. 3d at 663-64, 344 N.E.2d at 813.

In connection with the standing issue, the parties rely upon the following Federal cases.

In *Kauffman v. Dreyfus Fund, Inc.* (3d Cir. 1970), 434 F.2d 727, a shareholder of mutual funds brought an action against mutual funds, investment advisers, and directors alleging: (1) antitrust violations; (2) violation of the ICA (15 U.S.C. §80a—1 (1988)) based on investment advisers directing brokers to execute stock transactions for less than the commission paid and giving up the balance to others; and (3) misrepresentations in the preparation of proxy and other statements, including failure to disclose, in violation of the Securities Exchange Act of 1934 (15 U.S.C. §78n (1988)) (the Securities Exchange Act), the Investment Advisers Act of 1940 (15 U.S.C. §80b—6 (1988)), and the ICA. The court held that plaintiff did not have standing to bring the action where the injury was the reduction in value of corporate shares and was by definition indirect. *Kauffman*, 434 F.2d at 733-34.

The court stated as follows:

"A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has

been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue." *Kauffman*, 434 F.2d at 732.

But in *Yamamoto v. Omiya* (9th Cir. 1977), 564 F.2d 1319, 1326, the court held that a shareholder who alleges a deceptive or misleading proxy solicitation is entitled to bring both direct and derivative suits.

It was held in *Kusner v. First Pennsylvania Corp.* (3d Cir. 1976), 531 F.2d 1234, 1239, that if a purchaser could prove that she parted with consideration as a result of material misrepresentation in a prospectus, she could recover in a direct action. One count of plaintiff's complaint was based on sections 11 and 17(a) of the Securities Act (15 U.S.C. §§77k, 77q(a) (1988)) and on sections 10(b) and 18 of the Securities Exchange Act (15 U.S.C. §§78j(b), 78r (1988)), which prohibited misrepresentation and material omissions in connection with the purchase and sale of securities. *Kusner*, 531 F.2d at 1237.

Fraudulent representations made for the purpose of inducing shareholders to agree to the sale of the assets and made directly to shareholders by the corporation were proper allegations of individual shareholder injury in *Fidelis Corp. v. Litton Industries, Inc.* (S.D.N.Y. 1968), 293 F. Supp. 164, 168-69.

In *Gordon v. Fundamental Investors, Inc.* (S.D.N.Y. 1973), 362 F. Supp. 41, a mutual fund shareholder brought a class action against his mutual fund, its directors and its advisor, alleging violation of the ICA, based on a false and misleading proxy submitted to shareholders on the basis of which their shares were solicited for approval of a contract between the mutual fund's investment advisor and the mutual fund in which the subsequent advisor obtained 95% of the mutual fund's voting stock. The damages alleged were the profits derived by the investment advisor from the transaction. The court stated that a shareholder may sue on his own behalf for violation of a proxy rule but that he must have been affected in his own interest by the material omission or misstatement. (*Gordon*, 362 F. Supp. at 44.) It held that the complaint's allegations of omissions from the proxy statements were purported wrongs done to the corporation and that the contract was with the mutual fund and not with the shareholders. *Gordon*, 362 F. Supp. at 46.

A shareholder right of action also was not found in *Herman v. Steadman* (S.D.N.Y. 1970), 50 F.R.D. 488, 490, in which a mutual fund shareholder alleged violations of ICA, the "Federal Securities Acts," and the Investment Advisers Act of 1940, on the basis that excessive

and illegal brokerage commissions and advisory fees were paid by mutual funds, that there were improper commingling of assets resulting in loss, and that more was paid for the purchase of securities and less received for sales than should have been the case.

■ We reject defendants' proffered test of shareholder standing of whether a shareholder alleges unique harm. A plaintiff shareholder's injury may not be unique to that particular shareholder, but a plaintiff's cause of action could still be individual instead of derivative. In addition, a shareholder may have a right of action under the terms of a statute. If a statute provides a right of action to a shareholder, then the *Zokoych* examination of the nature of the injury does not apply. Below we address separately each count to determine if plaintiffs had standing to sue individually.

### COUNT V: SECTION 11 OF THE SECURITIES ACT AND SECTION 24 OF ICA

Count V alleged a violation of section 11 of the Securities Act, which states that any person acquiring a security in the case of an untrue statement or an omission of a material fact in the registration statement may bring an action. 15 U.S.C. §77k (1988).

Plaintiffs argue that the alleged violation of section 11 was an individual and not a derivative claim because the only proper plaintiff in a section 11 case is the purchaser of the security and because the mutual funds did not purchase interests in themselves. *Slavin v. Germantown Fire Insurance Co.* (3d Cir. 1949), 174 F.2d 799, which plaintiffs cite in support, was an appeal from the dismissal of a shareholder derivative action based upon section 10(b) of the Securities Exchange Act (15 U.S.C. §78j(b) (1988)). The court noted that with respect to a claim of false prospectus statements, the right of redress seemed to belong to those who purchased the securities. (*Slavin*, 174 F.2d at 807.) The court cited section 11 as one of several provisions of the Securities Act that undeniably gave a right of action to the purchaser of the securities but afforded no right of action to the corporation involved in that case inasmuch as the corporation was not a purchaser. (*Slavin*, 174 F.2d at 807 n.17.) But the issue of a right of action under section 11 was not an issue in the case.

■ Section 11 of the Securities Act creates a cause of action in favor of plaintiffs based on the filing of registration statements containing material misrepresentations. (15 U.S.C. §77k (1988).) The mutual funds could not sue for violation of section 11 because they did not acquire securities in themselves. The dismissal of count V is therefore reversed on the basis that plaintiffs' section 11 claim was prop-

erly brought as an individual action instead of a shareholder derivative action.

Count V also alleged that the conduct violated section 24 of the ICA (15 U.S.C. §80a—24 (1988)). Section 24 relates to the registration of securities under the Securities Act, but it is not apparent from the count how section 24 was allegedly violated. We do not address plaintiffs' standing to allege a section 24 violation because neither party discussed the issue on appeal.

### COUNT VI: SECTION 12 OF THE SECURITIES ACT

Plaintiffs argue that section 12 of the Securities Act creates a cause of action in favor of only those who purchase a security in reliance upon an untrue prospectus. (15 U.S.C. §77l (1988).) Plaintiffs also argue that, under section 12(2) (15 U.S.C. §77l(2) (1988)), the only remedy available to a plaintiff who still owns the securities is rescission (15 U.S.C. §77l(2) (1988)), and that the only person who could rescind is the purchaser.

Section 12 states in relevant part:

"Any person who—

(1) offers or sells a security in violation of section 5 [15 U.S.C. §77e (1988)] or

(2) offers or sells a security *** by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading *** shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon *** or for damages if he no longer owns the security." 15 U.S.C. §§77l(1), (2) (1988).

■■ The cases upon which plaintiffs rely state that section 12 creates a cause of action for purchasers of securities. *Surowitz v. Hilton Hotels Corp.* (7th Cir. 1965), 342 F.2d 596, 603, *rev'd on other grounds* (1966), 383 U.S. 363, 15 L. Ed. 2d 807, 86 S. Ct. 845 (the cause of action created by section 12 accrued only to the purchaser of securities); *Soderberg v. Gens* (N.D. Ill. 1987), 652 F. Supp. 560, 564 (section 12(2) created an action for a purchaser to claim against his immediate seller); *Roger v. Lehman Brothers Kuhn Loeb, Inc.* (S.D. Ohio 1984), 604 F. Supp. 222; *Glusband v. Fittin Cunningham*

*Lauzon, Inc.* (S.D.N.Y. 1984), 582 F. Supp. 145, 149-50 (under section 12(2), only purchasers of a security may sue).

Count VI, which alleges the falsity of prospectuses upon which plaintiffs relied, is an action that could not be brought by the mutual funds and therefore was not a shareholder's derivative action. Therefore, we reverse count VI's dismissal.

### COUNT III: ILLINOIS CONSUMER FRAUD ACT

■ Plaintiffs argue that the Illinois Consumer Fraud Act creates a cause of action in favor of any person who suffered damage as a result of its violation. (Ill. Rev. Stat. 1991, ch. 121½, par. 270a.) Plaintiffs also argue that only consumers have a cause of action under the Act (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 328, 371 N.E.2d 634, 638), and that only plaintiffs have standing to maintain an action alleging the Act's violation.

The Act states in part:

"Any person who suffers damages as a result of a violation of this Act committed by any other person may bring an action against such person." (Ill. Rev. Stat. 1991, ch. 121½, par. 270a.)

Section 1(e) defines consumer as follows:

"The term 'consumer' means any person who purchases or contracts for the purchase of merchandise ***." Ill. Rev. Stat. 1991, ch. 121½, par. 261(e).

Only the individual plaintiffs purchased interests in the Public Funds therefore they, and not the mutual funds, could allege that they relied upon prospectuses that were false and contained omissions. Therefore, count III's dismissal is reversed.

### COUNT I: COMMON LAW FRAUD

Plaintiffs argue that it would be impossible for the funds to assert the common law fraudulent inducement claims because the mutual funds did not purchase interests in themselves.

The elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 452, 546 N.E.2d 580, 591.) Concealment of an existing material fact can also be fraud if accompanied by *scienter*, deception, and injury. *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 195, 380 N.E.2d 1040, 1044.

Therefore, only the plaintiffs and other investors who invested in the securities, and not the mutual funds, could allege that misrepresentations in prospectuses induced them to invest. (See *Wilson v. Askew* (W.D. Ark. 1989), 709 F. Supp. 146 (plaintiff shareholder alleged individual injury where defendants misappropriated corporate funds for their personal gain to defraud plaintiff of his initial investment in the corporation).) Count I should not have been dismissed because it was not a shareholder's derivative claim.

## COUNT II: BREACH OF FIDUCIARY DUTY

Plaintiffs argue that defendants owed common law fiduciary duties to plaintiff security purchasers as they were sellers of securities. Plaintiffs also argue that, although the mutual funds may have other breach of fiduciary duty claims against defendants, the mutual funds themselves cannot complain of the breach of fiduciary duties by which plaintiffs were fraudulently induced to invest so that the count should not have been dismissed.

■ Under *Zokoych* (36 Ill. App. 3d at 663, 344 N.E.2d at 813), individual shareholders may bring an action based upon violations of a duty owed directly to them. As sellers of securities, defendants owed common-law fiduciary duties to individual investors. Therefore, count II should not have been dismissed because it was not a shareholder's derivative claim because it alleged a duty owed directly to plaintiffs.

## COUNT IV: ACCOUNTING

■ To sustain an action for accounting in equity, the complaint must allege the absence of an adequate remedy at law and one of the following: "(1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." (*People ex rel. Hartigan v. Candy Club* (1986), 149 Ill. App. 3d 498, 501, 501 N.E.2d 188, 190.) Although equitable remedies are denied when there is an adequate remedy at law, there is an exception for when an accounting action is sought based upon a breach of a fiduciary duty so that a plaintiff may proceed with the action. (*Candy Club*, 149 Ill. App. 3d at 501, 501 N.E.2d at 190.) In this case plaintiffs have alleged fraud and a breach of a fiduciary duty, thereby stating a cause of action for accounting in equity.

Plaintiffs argue that only plaintiffs were entitled to an accounting of the damages suffered as a result of being fraudulently induced to invest in the funds.

Plaintiffs' action for accounting could not have been brought as a shareholder's derivative action because plaintiffs seek an accounting of damages in connection with their individual causes of action. Count IV should not have been dismissed.

### REMAINING COUNTS: INVESTMENT COMPANY ACT OF 1940

■ Plaintiffs argue that only they as shareholders may assert under the ICA claims that are premised upon fraudulent inducement, that all of their ICA claims are premised upon fraudulent inducement, and that mutual fund investors may pursue direct actions against mutual fund advisors.

### COUNT VII: SECTION 17(j) AND RULE 270.17j–1

Count VII alleges violation of section 17(j) of the ICA (15 U.S.C. §80a–17(j) (1988)) and SEC Rule 270.17j–1 (17 C.F.R. §270.17j–1 (1992)) based on Richards' speculating, commingling of funds, and wrongful allocating of trades.

Section 17(j) provides in part:

> "It shall be unlawful for any affiliated person of or principal underwriter for a registered investment company or any affiliated person of an investment adviser of or principal underwriter for a registered investment company, to engage in any act, practice, or course of business in connection with the purchase or sale, directly or indirectly, by such person of any security held or to be acquired by such registered investment company in contravention of such rules and regulations as the [Securities Exchange] Commission may adopt to define, and prescribe means reasonably necessary to prevent, such acts, practices, or courses of business as are fraudulent, deceptive or manipulative." 15 U.S.C. §80a–17(j) (1988).

SEC Rule 270.17j–1 provides in separate subsections for unlawful actions, including: (1) employing any device, scheme or artifice to defraud the registered investment company (17 C.F.R. §270.17j–1(a)(1) (1992)); (2) engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any such registered investment company (17 C.F.R. §270.17j–1(a)(3) (1992)); and (3) engaging in any manipulative practice with respect to the registered investment company (17 C.F.R. §270.17j–1(a)(4) (1992)).

Plaintiffs argue that there is a private right of action under section 17(j)–1 (15 U.S.C. §80a–17(j) (1988)) but that no case has addressed whether a private right of action exists under this particular section. Plaintiffs cite in support cases finding private rights of action

under other sections of the ICA, including another subsection of section 17. See, *e.g.*, *Lessler v. Little* (1st Cir. 1988), 857 F.2d 866 (section 17(a)(2) (15 U.S.C. §80a—17(a)(2) (1988))); *Goodall v. Columbia Ventures, Inc.* (S.D.N.Y. 1974), 374 F. Supp. 1324, 1328 (section 17(a) (15 U.S.C. §80a—17(a) (1988))); *Bancroft Convertible Fund, Inc. v. Zico Investment Holdings, Inc.* (3d Cir. 1987), 825 F.2d 731, 736 (section 12(d)(1)(A) (15 U.S.C. §80a—12(d)(1)(A) (1988))); *Krinsk v. Fund Asset Management, Inc.* (S.D.N.Y. 1987), 654 F. Supp. 1227, 1232-34, *aff'd* (2d Cir. 1989), 875 F.2d 404 (section 20 (15 U.S.C. §80a—20 (1988))); *Krome v. Merrill Lynch & Co.* (S.D.N.Y. 1986), 637 F. Supp. 910, 917-20 (sections 22, 7(a), 10(b), 15(a), 15(b), 17(a) and 34(a) (15 U.S.C. §§80a—22; 80a—7(a), 80a—10(b), 80a—15(a),(b), 80a—17(a), 80a—33 (1988))); *Meyer v. Oppenheimer Management Corp.* (2d Cir. 1985), 764 F.2d 76, 88 (section 15(f) (15 U.S.C. §80a—15(f) (1988))). See also *Clemente Global Growth Fund, Inc. v. Pickens* (S.D.N.Y. 1989), 705 F. Supp. 958, 963 (private right of action under section 12(d)(1)(A) (15 U.S.C. §80a—12(d)(1)(A) (1988))); *Dowling v. Narragansett Capital Corp.* (D.R.I. 1990), 735 F. Supp. 1105, 1114-16 (*Lessler* holding of private cause of action for section 17(a)(2) (15 U.S.C. §80a—17(a) (1988)) should encompass other ICA sections, including section 36(a) (15 U.S.C. §80a—35(a) (1988))).

The holdings of Federal courts that there is a private right of action under section 17(a) are persuasive in leading this court to find a private right of action under section 17(j). Both subsections proscribe certain transactions and conduct on the part of affiliated persons and principal underwriters. There is no reason to permit a private right of action under one subsection and not the other. Therefore, the dismissal of count VII is reversed.

## COUNT VIII: SECTION 36(b)

Count VIII alleged that section 36(b) of the ICA (15 U.S.C. §80a—35(b) (1988)) permitted plaintiffs to sue for breach of defendants' fiduciary duties.

Section 36(b) states that an investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services or of payments of a material nature, paid by the registered investment company or by the security holders thereof, to the investment adviser or any affiliated person of the investment adviser. (15 U.S.C. §80a—35(b) (1988).) An action can be brought by a security holder of the registered investment company on behalf of such company against the investment adviser or any affiliated person of the investment adviser for breach of

fiduciary duty in respect of the compensation or payments paid. 15 U.S.C. §80a—35(b) (1988).

Defendants argue that the circuit court does not have jurisdiction over such a claim because of section 36(b)'s provision that any action pursuant to the section may be brought only in a United States District Court. This subsection states:

> "Any action pursuant to this subsection may be brought only in an appropriate district court of the United States." (15 U.S.C. §80a—35(b)(5) (1988).)

Plaintiffs argue that although defendant's argument is well taken, the issue properly should be considered by the trial court on remand.

There is no reason why this court should not address this issue. The statute clearly provides that only a Federal court has jurisdiction to hear section 36(b) claims. On the basis that the trial court below did not have jurisdiction over count VIII, the dismissal of the count is affirmed.

### COUNT IX: SECTION 37

Section 37 of the ICA states in relevant part:

> "Whoever steals, unlawfully abstracts, unlawfully and willingly converts to his own use or to the use of another, or embezzles any of the moneys, funds, securities, credits, property, or assets of any registered investment company shall be deemed guilty of a crime, and upon conviction thereof shall be subject to the penalties provided in section 80a—48." 15 U.S.C. §80a—36 (1988).

In support of their argument that count IX was a proper cause of action, plaintiffs cite *Brown v. Bullock* (S.D.N.Y. 1961), 194 F. Supp. 207, *aff'd* (2d Cir. 1961), 294 F.2d 415; *Fogel v. Chestnutt* (2d Cir. 1975), 533 F.2d 731, and *Krome v. Merrill Lynch & Co.* (S.D.N.Y. 1986), 637 F. Supp. 910. In *Brown* (294 F.2d at 419-20), plaintiffs-shareholders' claim based on section 37 was upheld as proper. Defendants argue that presumably plaintiffs intended to cite *Fogel v. Chestnutt* (2d Cir. 1981), 668 F.2d 100, because *Fogel* (533 F.2d 731) does not discuss private rights of action. But *Fogel* (668 F.2d at 112) did not address section 37 directly; rather, it stated that investors had a private right of action under the ICA, except for suits under section 30(f) (15 U.S.C. §80a—29(f) (1988)). In *Krome*, plaintiffs, who were purchasers of zero coupon bonds from defendants, alleged that defendants converted money in violation of section 37. The court held that a private right of action for damages existed for this claim. *Krome*, 637 F. Supp. at 920.

Defendants argue that *Krome* is an anomalous decision that inexplicably implied a private right of action under section 37 although defendant there was not an investment company and although the ICA applied only to investment companies. Defendants also argue that section 37 does not provide a remedy of damages but only a fine and imprisonment, obtainable by the United States Attorney General or the SEC.

Section 37 clearly establishes that certain conduct is criminal and does not provide for a civil cause of action or for a civil remedy. We decline to follow *Krome* and *Brown*. (See *Transamerica Mortgage Advisors, Inc. v. Lewis* (1979), 444 U.S. 11, 15, 62 L. Ed. 2d 146, 152, 100 S. Ct. 242, 245 (the question whether a statute creates a cause of action is basically a matter of statutory construction).) The dismissal of count IX is therefore affirmed.

Defendants also argue that counts were properly dismissed because of the failure to state claims sufficiently. Plaintiffs argue that their complaint was factually sufficient. Although an appellee may raise any ground in the record to affirm the judgment, it would not be fair to address on appeal the issue of the failure to state causes of action and to affirm on this alternative basis because plaintiffs could possibly have amended their complaint to cure any defects. See *Trent v. Brasch Manufacturing Co.* (1985), 132 Ill. App. 3d 586, 593, 477 N.E.2d 1312, 1317 (although a reviewing court may affirm a judgment on any basis appearing in the record, justice would not be served by affirming a dismissal of a judgment against a party on the basis of a pleading defect which would be remedied by amendment).

The judgment of the trial court dismissing counts VIII and IX is affirmed, the judgment of the trial court dismissing counts I through VII is reversed, and the cause is remanded.

Affirmed in part; reversed in part and remanded.

GREIMAN, P.J., and RIZZI, J., concur.