Werner **FRANK** and Werner Frank Enterprises, Inc., Plaintiffs–Appellants,

v.

**HADESMAN AND FRANK, INC.,** et al., Defendants–Appellees.

No. 95–3791.

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1996.

Decided May 3, 1996.

Patrick R. Gabrione, Foran & Schultz, Chicago, IL, Michael T. Thornton (argued), Atlanta, GA, for plaintiffs-appellants.

David M. Mattenson, Chicago, IL, Stuart I. Gordon (argued), Kanter & Mattenson, Chicago, IL, for Herbert H. Hadesman, Jeanne Hadesman.

Thomas L. Browne, Bruce L. Carmen (argued), D. Kendall Griffith, Hinshaw & Culbertson, Chicago, IL, for Steven A. Miner.

Before FLAUM, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Since 1980 Herbert Hadesman has sold gift wear and related items from space in Chicago's Merchandise Mart. Hadesman and Werner Frank are the principal shareholders in Hadesman & Frank, Inc., a corporation formed to conduct the trade. Today Hadesman and Frank are enemies. In this suit under the diversity jurisdiction Frank accuses Hadesman of making off with the corporation's business, effectively transferring it to a new firm, Hadesman & Associates, Inc., from which Frank has been excluded.

The district judge immediately detected a jurisdictional problem: Frank's only claim against Hadesman & Frank, Inc., was to collect a debt of $50,000, plus accumulated interest. Yet 28 U.S.C. § 1332(a) provides jurisdiction only when the amount in controversy *exceeds* $50,000, "exclusive of interest and costs". All remaining claims alleged wrongdoing by Hadesman, his wife, or Steven Miner, the corporation's lawyer (and a member of its board). After receiving submissions from the parties, the district judge concluded that Frank lacks standing to pursue these claims and dismissed the suit. "Standing" is a misnomer, because Frank has alleged injury in fact. His investment in Hadesman & Frank, Inc., has declined in value. Frank's problem is not standing (in the sense that the complaint does not allege a "case or controversy" justiciable under Article III) but the identity of the real party in interest. "Every action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a). Does the claim belong to Frank personally, or to Hadesman & Frank, Inc.? That is a question of state law, *Brocklesby Transport v. Eastern States Escort Services*, 904 F.2d 131, 133 (2d Cir.1990); cf. *Kamen v. Kemper Financial Services Inc.*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)—in this case, the law of Illinois, because Hadesman & Frank, Inc., is incorporated in Illinois, and the internal affairs doctrine calls for the use of the incorporating state's law. *Nagy v. Riblet Products Corp.*, 79 F.3d 572 (7th Cir. 1996). The district judge used this body of law; a change of

label from "standing" to "real party in interest" does not affect the analysis.

Treating the corporation as the owner of the claim has both procedural and jurisdictional consequences. The procedural consequence is that Frank must notify the firm's board (or establish an exception to that requirement) and demand that the firm bring the suit in its own name; only after a refusal may Frank institute derivative litigation in the right of the corporation. 805 ILCS 5/7.80(b); *Valiquet v. First Federal Savings & Loan Association,* 87 Ill.App.3d 195, 42 Ill.Dec. 212, 217, 408 N.E.2d 921, 926 (1st Dist. 1979); *Goldberg v. Ball,* 305 Ill.App. 273, 27 N.E.2d 575 (1st Dist. 1940). Once the suit was filed, the court would treat it much like a class action, because Frank would be a representative for all investors in the firm. Fed.R.Civ.P. 23.1. The jurisdictional consequence is that in any future litigation Hadesman & Frank, Inc., would appear as the plaintiff. That would put citizens of Illinois on both sides and prevent the exercise of federal jurisdiction, unless Frank could demonstrate that the corporation should be realigned as a defendant under the approach of *Smith v. Sperling,* 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957).

▮▮▮ Illinois follows the widespread rule that an action for harm to the corporation must be brought in the corporate name. When investors have been injured in common, they must continue to act through their collective—the corporation. *Cashman v. Coopers & Lybrand,* 251 Ill.App.3d 730, 732–33, 191 Ill.Dec. 317, 319–20, 623 N.E.2d 907, 909–10 (2d Dist. 1993); *Mann v. Kemper Financial Companies, Inc.,* 247 Ill.App.3d 966, 974–77, 187 Ill.Dec. 726, 732–34, 618 N.E.2d 317, 323–25 (1st Dist. 1993); *Zokoych v. Spalding,* 36 Ill.App.3d 654, 344 N.E.2d 805 (1st Dist. 1976). See also *Weissman v. Weener,* 12 F.3d 84 (7th Cir.1993); *Kagan v. Edison Brothers Stores, Inc.,* 907 F.2d 690, 692–93 (7th Cir.1990). Injury to the corporation does not, however, prevent suit by an investor who suffers a distinct personal injury—for example, a shareholder who alleges that members of the board have refused to return stock pledged to secure a debt, even after the loan has been paid; or a shareholder-employee who contests his discharge from employment. *Elrod v. Ripley,* 97 Ill. 503 (1901); see *Zokoych,* 36 Ill.App.3d at 663–64, 344 N.E.2d at 813. The American Law Institute's *Principles of Corporate Governance: Analysis and Recommendations* § 7.01 (1992), captures this nicely: "An action in which the holder [i.e., the investor] can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action.... An action in which the holder can prevail without showing an injury or breach of duty to the corporation should be treated as a direct action that may be maintained by the holder in an individual capacity." The fired employee can prevail without showing corporate injury; indeed, the discharge may have been designed to improve the corporation's operations. The investor whose certificates are sequestered suffers an injury unrelated to the firm, for the same reason as the theft of someone's shares in Exxon injures the investor but not Exxon. See also Reporter's Note 1 to § 7.01, which catalogs situations that have been treated as supporting direct actions; 2 *Model Business Corporation Act Annotated* § 7.40 at 7–265 to 7–268 (1995 Supp.). Frank does not allege that he was fired (he was not an employee to begin with) or that his shares have been canceled; he alleges that the entire firm was hollowed out and its business transferred to a new corporation. That injures all investors alike, so the action is derivative. See *Seinfeld v. Bays,* 230 Ill. App.3d 412, 172 Ill.Dec. 6, 595 N.E.2d 69 (1st Dist. 1992) (action for corporate waste and devaluation of stock is derivative).

Frank replies that although he and Hadesman may have suffered equally, in their capacity as shareholders in Hadesman & Frank, Inc., Hadesman reaped an offsetting gain through his new venture. Hadesman was a net winner, Frank a net loser. According to Frank, the disproportionate harm he suffered entitles him to litigate individually. So put, the argument is similar to one advanced in *Mann,* which spurned it: "We reject [any] test of shareholder standing of whether the shareholder alleges unique harm." 247 Ill.App.3d at 977, 187 Ill.Dec. at 734, 618 N.E.2d at 325. The district judge relied principally on *Mann.* Unaccountably,

Frank does not mention that case in his brief. We take the omission as a concession.

Frank was a supplier to Hadesman & Frank, Inc.: a supplier of capital, of consulting services, and of information about good sources of gift wear for the firm to showcase and sell. But none of these involves any contract (or equivalent personal right) that Hadesman & Frank, Inc., dishonored. According to the complaint, Hadesman appropriated *the corporation's* custom. To see this, consider one of the assets Hadesman supposedly stole: the firm's customer list. A customer list is property of the firm, and an employee (even a chairman of the board) who puts that information to personal use has violated a duty to the corporation. That does not imply a violation of any duty to an investor. If Frank had used the same list for personal benefit, that act would have been an identical wrong, and again a wrong committed against the corporation. Frank wants us to treat these events as if *he* owned the customer list and had merely lent it to the corporation. If that is the right understanding, then Hadesman walked off with Frank's property—and it is also true that Frank could have set up a competing business, using the list, without complaint from Hadesman or the corporation. But Frank does not contend that he was free to make personal use of the customer list while Hadesman was not; instead Frank depicts the list, the leasehold in the Merchandise Mart, and the entire custom and goodwill of the business as corporate assets. On that understanding, the wrong was done to the corporation, and the suit is derivative.

Much of Frank's argument amounts to a plea that we establish a special rule for close corporations, permitting wronged investors direct access to the courts without the complex, time-consuming, and often unnecessary formalities of derivative litigation. Suppose Frank is half owner of Hadesman & Frank, Inc. Then demand on the board will be futile (the directors will deadlock); a new suit will be filed; Hadesman & Frank, Inc., will recover damages (we indulge the assumption that the facts are as the complaint depicts them); and half of the award will be returned to Hadesman. Would it not be simpler to allow Frank to sue in his own name,

and to collect his half-interest in the harm done to the firm?

Simpler, yes, but whether simpler is better depends on the function of the requirements that litigation be brought by the firm itself, and that a dissatisfied investor make demand on the board. For public corporations, these requirements permit the firm's managers to treat litigation like any other business prospect, and to decide whether its potential returns justify the costs. Limits on direct litigation instantiate the business judgment rule for corporate management, and they prevent the corporation's endeavors from being hijacked by investors whose ends may be personal (perhaps they seek an award of fees) or ideological, and therefore may be antagonistic to the profit goal of most shareholders. See *Kamen v. Kemper Financial Services, Inc.,* 939 F.2d 458 (7th Cir.1991). Most of these considerations are either inapplicable, or of substantially less weight, for close corporations, and the economic difference could well justify a difference in legal treatment. So the American Law Institute concluded, when it proposed in *Principles of Corporate Governance* § 7.01(d) that for close corporations "the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery".

But there is a catch—two catches, actually, and the second is dispositive. The ALI's proposal has a series of provisos, designed to induce the court to consider the aspects of the direct-versus-derivative choice relevant even for close corporations. Sometimes shareholders bring direct actions in order to deny other investors, particularly creditors, a share of the recovery. If the firm is insolvent, the recovery belongs to the creditors; and when the firm has debt but the equity interest retains value, it is much easier to award the recovery to the corporation and allow the funds to be distributed according to contracts and bankruptcy priorities than it is to attempt to value one party's claim as a stand-alone matter. See *Mid–State Fertilizer Co. v. Exchange National Bank of Chicago,* 877 F.2d 1333, 1335–36 (7th Cir.1989); *Weissman,* 12 F.3d at 86–87. Recovery by the firm also matters if the business is flour-

ishing, and the majority of investors want to reinvest the winnings. Allowing one investor to recover directly effectively forces the firm to buy out his shares, which corporate law rarely if ever requires. Then there is the risk that direct litigation may multiply the number of suits, with different investors going their own ways. Section 7.01(d) of the *Principles of Corporate Governance* requires a court to consider possibilities like these. Frank's complaint and briefs have not supplied enough information to make such an analysis possible (we do not know, for example, what claims any creditors of Hadesman & Frank, Inc., may have).

Catch No. 2 avoids any need for us to pursue this matter. Someone who wants a state to change its law must ask the state, but Frank filed this suit in federal court. Federal courts acting under the diversity jurisdiction are not the right forums for departures from established rules. None of the Illinois cases we have found establishes, or even hints at, any discretionary power to treat a derivative injury as if it were direct. Less than three years ago, in *Weissman,* we applied the standard direct-derivative distinction to a suit filed by a 50 percent shareholder in an Illinois close corporation. No state case decided since then suggests that Illinois is ready to implement the approach of § 7.01(d). The American Law Institute recognizes that § 7.01(d) is not the majority position (see Reporter's Note 4 to that section); the ALI simply commended the idea to the states. We have predicted that Delaware would not follow § 7.01(d). *Bagdon v. Bridgestone/Firestone, Inc.,* 916 F.2d 379 (7th Cir.1990). Illinois likewise lacks any support for this approach. Perhaps the state ultimately will elect to join the minority; perhaps adherents of § 7.01(d) will swell and become the majority. Only state legislatures and state courts have the authority to change state law. By filing this suit in federal court, Frank accepted the current condition of Illinois law, which the district judge correctly divined.

AFFIRMED.