MURDOCK, Justice
(dissenting).
I agree fully with the trial court.
The law imposes duties on investment advisors in relation to their interactions with prospective investors. These include the duty not to make false representations *322 as to the nature or quality of securities currently held or to be held by a given fund. If a misrepresentation is made by an investment advisor to a prospective investor that induces the prospective investor to invest in a fund it otherwise would not have invested in, there may be an actionable claim by the investor based on the duty running from the investment ad-visor to the individual investor. On the other hand, the failure of a fund manager at some subsequent date to invest the assets of the fund prudently is a breach of a different duty, one that is owed to the fund. There is a clear difference between the claim of a prospective investor misled into investing in a fund by the fraudulent advice of an investment advisor and a claim by a “shareholder” who never received fraudulent investment advice but who nonetheless eventually suffered a loss when a fund manager subsequently mismanages the fund.
Perhaps if this were a case in which an investor had somehow suffered a loss immediately upon receiving and acting upon fraudulent investment advice, the difference in that investor’s claim and a claim by a “shareholder” who never received fraudulent investment advice but who suffers a loss at some future date (along with the rest of the fund) when the fund’s investments lose value would be more readily discernible. (By the same token, if the party playing the role of investment advis- or and the party playing the role of fund manager were not one and the same, this case would be simpler.) In this case, however, the loss suffered by the plaintiffs as a result of the decision to invest (and remain invested) in the fund in reliance upon the allegedly fraudulent advice of the investment advisor is a loss that was not suffered until the undisclosed investment strategy employed by the fund also resulted in a loss to the fund itself (and derivatively to its shareholders). The losses experienced by both categories of allegedly aggrieved parties, therefore, were experienced at that same time and as a result of the same culminating events. The allegedly defrauded investor’s loss, however, unlike the fund’s loss, is traceable to the fraudulent advice the investor received; the losses experienced by other shareholders, who did not receive or act upon such advice in becoming shareholders of the fund, is not. Consequently, the latter shareholders are limited to a derivative claim by which they assist the fund in vindicating its loss for the subsequent mismanagement of the fund.[5]
In one of two Maryland cases addressed in the main opinion, Wasserman v. Kay, 197 Md.App. 586, 620, 14 A.3d 1198, 1213 (2011), the Maryland court held that legal duties owed to a shareholder, when breached, give rise to direct claims “when either (1) the shareholder suffers the harm directly or (2) a duty is owed directly to the shareholder.” Wasserman involved the application of the stated principle in the context of partnerships and limited liability companies. The main opinion declines to apply these principles to the present case because, it says, the claims here fall in a “corporate context.” Of course, the claims involved here do not strictly involve “corporate law” or the rights of shareholders of a “corporation,” and I question whether the claims in Wasserman involving limited liability companies are any further removed from the “corporate context” than the trust-related claims in the present case. In any event, the factual differences between Wasserman and the *323 present case provide no meaningful basis for rejecting the application of the stated principle in the present case.
In the other Maryland case addressed in the main opinion, Shenker v. Laureate Education, Inc., 411 Md. 317, 983 A.2d 408 (2009), the court addressed the rights of a shareholder who was forced to sell his stock as part of a so-called “cash-out merger,” holding that “where a shareholder is cheated through misrepresentation and fraud during a sale of stock, no right of action accrues to the corporation because the stock is the personal property of the stockholder.” 411 Md. at 346, 983 A.2d at 425. Relying upon the decision of this Court in Ex parte Regions Financial Corp., 67 So.3d 45 (Ala.2010), the main opinion seeks to distinguish Shenker from the present case based on the fact that Shenker involved a forced sale of stock in a cash-out merger context. As is true of Wasserman, the factual differences between Shenker and the present case provide no meaningful distinction that prevents the principle recognized in Shenker from applying here. The transferability of the principle stated in Shenker to this case can be expressed with the following revised iteration of that principle: “Where [a buyer] is cheated through misrepresentation and fraud during a [purchase] of stock, no right of action accrues to the corporation because the [cash used for the purchase] is the personal property of the [buyer].” See also James J. Hanks, Jr., Maryland Corporation Law 268 (Aspen 2007) (quoted with approval in Bender v. Schwartz, 172 Md.App. 648, 665-66, 917 A.2d 142, 152 (2007)) (“If the wrong alleged was committed against the stockholder rather than the corporation, then the stockholder must bring the action as a direct action — either individually or as a representative of a class — and not as a derivative action.”).
In Ex parte Regions Financial Corp., this Court sought to distinguish Shenker as follows:
“[T]he limited rule announced by the Shenker court that, ‘in a cash-out merger transaction where the decision to sell the corporation already has been made, shareholders may pursue direct claims against directors for breach of their fiduciary duties of candor and maximization of shareholder value,’ 411 Md. at 342, 983 A.2d at 422, is inapplicable here, where the shareholders are essentially seeking damages for fraud based on the defendants’ misrepresentations covering up their alleged mismanagement of the RMK funds. Courts have generally rejected attempts by plaintiffs to convert traditionally derivative claims into direct claims based on the failure of the alleged guilty parties to disclose their bad acts.”
67 So.3d at 54 (emphasis added). But see Ex parte Regions Financial Corp., 67 So.3d at 56 (Murdock, J., dissenting). The problem with this analysis becomes clear when one attempts to apply it to the present case. What is described in the passage emphasized above simply is not what is going on here. That is, the direct claim asserted by the sisters is not one complaining of the concealment of alleged mismanagement of the RMK funds. Instead, the sisters are seeking damages for fraud based on alleged misrepresentations as to the nature of the securities in which the funds already were and would remain invested, fraud that allegedly induced the trusts established for the benefit of the sisters to be “shareholders” in the RMK fund when they otherwise would not have been. Thus, as noted, although the sisters’ losses eventually might have been experienced at the same time and perhaps even in the same measure as the losses suffered by investors who were injured solely as a result of the defendants’ eventual misman *324 agement of the RMK funds, they are nonetheless, in the contemplation of the law, a different injury resulting from a distinctly different cause of action.[6]
Courts in other cases have recognized the distinction between claims of fraud inducing a plaintiff to invest in a fund or corporation and derivative claims for losses suffered by the fund or corporation when it is mismanaged. In Mann v. Kemper Financial Cos., 247 Ill.App.3d 966, 618 N.E.2d 317, 187 Ill.Dec. 726 (1992), for example, the court recognized that mutual-fund investors’ fraud claims, like the claims at issue here, pertained to misrepresentations that caused.the investors to purchase shares in certain mutual funds and were direct claims against the investment advisor that made those representations, even though the investment advisor also advised the subject mutual fund. The court addressed a common-law fraud claim in Mann as follows:
“Count I alleged common law fraud based upon the above allegations. In marketing the mutual funds, the corporate defendants repeatedly made material representations in the prospectuses that the funds did not engage in speculative trading in financial futures contracts. The corporate defendants knew that the representations were false. The corporate defendants and Richards concealed from plaintiffs their speculative trading, commingling of trades, and misallocation of trades. The misrepresentations and subsequent concealment were intended to, and did, induce plaintiffs to invest in the mutual funds. Plaintiffs would not have invested in the mutual funds or retained their investments had they known of the speculation. The reliance was reasonable because the representations were contained in the prospectuses. Plaintiffs were injured as a result of the reliance.”
247 Ill.App.3d at 971, 618 N.E.2d at 321, 187 Ill.Dec. at 730 (emphasis added). The Mann court further stated:
“[Ojnly the plaintiffs and other investors who invested in the securities, and not the mutual funds, could allege that misrepresentations in prospectuses induced them to invest.”
247 Ill.App.3d at 980, 618 N.E.2d at 326, 187 Ill.Dec. at 735.
Similarly, in In re Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F.Supp.2d 474, 494 n. 11 (S.D.N.Y.2004), the federal district court for the Southern District of New York explained:
“The fact that plaintiffs have adequately alleged that the individual defendants made false or misleading statements also distinguishes this case from those where the court dismissed the plaintiff’s claims because the allegations amounted to nothing more than corporate mismanagement. Although ‘poor business judgment is not actionable under’ federal securities laws, a plaintiff has alleged more than mere corporate mismanage *325 ment when he has adequately alleged that the defendant made false statements concerning historical facts. Rothman [v. Gregor], 220 F.3d [81] at 90 [(2d Cir.2000)]; see also Hurley v. Fed. Deposit Ins. Corp., 719 F.Supp. 27, 30 (D.Mass.1989) (‘The prohibition on individual shareholders bringing a 10b-5 claim based on corporate mismanagement is inapplicable where ... there are allegations of material misrepresentations or omissions.’).”
(Emphasis added.)
Moreover, in a case involving some of the same parties and dynamics as are in the present case, the federal district court for the Western District of Tennessee has explained:
“Material misrepresentations in a registration statement of the risk posed by the Funds’ holdings are actionable under the [19]33 Act. See 15 U.S.C. § 77k(a); In re Citigroup, Inc. Bond Litig., No. 08 Civ. 9522, 2010 U.S. Dist. ... (S.D.N.Y. July 12, 2010). An allegation that a statement was false when made is actionable under the federal securities laws and does not state an invalid mismanagement [...] claim. In re Atlas Worldwide Holdings, 324 F.Supp.2d at 494 n. 11. Lead Plaintiffs allege that Defendants stated they would not invest more than 15% of the Funds’ assets in illiquid securities or more than 25% of the Funds’ assets in securities related to the same industry. (CACIffl 162, 276.) Lead Plaintiffs also allege that those statements were misleading when made because the Funds were, at that time, in violation of the stated restrictions.”
In re Regions Morgan Keegan Sec., Derivative, No. 07-2784, MDL 2009 (W.D.Tenn., Dec. 30, 2010) (not selected for publication in F.Supp.2d).
As a final “litmus test” of the understanding of the law expressed above, I would point to the following simple notion, well explained by the trial court in its response to the petition before us: The fund, and those who would sue only derivatively on behalf of the fund, cannot sue an investment advisor for inducing someone to invest in the fund itself. As the trial court added, “[i]f the RMK funds lacked standing to assert the claims at issue, how could such claims be derivative in nature?” To paraphrase the Mann court, “only the plaintiffs and other investors who invested in the [funds], and not the mutual funds [themselves], could allege that misrepresentations in prospectuses induced them to invest [in the funds].” Mann, 247 Ill.App.3d at 980, 618 N.E.2d at 326, 187 Ill.Dec. at 735 (emphasis added). See also 247 Ill.App.3d at 977, 618 N.E.2d at 325, 187 Ill.Dec. at 734 (“The mutual funds could not sue [under 15 U.S.C. § 776 (1988) for a misrepresentation] because they did not acquire securities in themselves.” (emphasis added)).
The trial court concluded that the duty owed and allegedly breached by MAM in its role as investment advisor to a prospective investor is a distinctly different duty that gives rise to a distinctly different cause of action on the part of a differently situated plaintiff than the duty owed the RMK fund and allegedly breached by MAM in its role as manager of the RMK fund. I believe these differences are clearly recognized in the law and that this Court errs today in not recognizing and acting upon them.

. One might say that the allegedly fraudulent advice is the “cause of action” that is held by certain investors. Shareholders who did not receive and act upon such fraudulent advice in acquiring their shares simply do not have the same "cause."

. The main opinion states that "the alleged injury here was not the purchase of the RMK funds per se,” but instead was the loss suffered when the RMK funds subsequently declined. 86 So.3d at 320. I fully agree that the purchase was not "per se” the injury; as noted, additional events were necessary for the plaintiffs eventually to suffer a loss as a result of the purchase. That does not change the fact, however, that the allegedly fraudulently induced purchase is the gravamen of and necessary to the cause of action asserted here and that, in this regard, the claim asserted here is distinctly different from a claim brought by a shareholder based not on a misrepresentation that induced that shareholder to purchase shares in the fund in the first place, but rather based merely on the mismanagement of the fund at some point in time when the plaintiff happens to be a shareholder in the fund regardless of how he or she came to be so.