STEPHEN BARRETT, Plaintiff-Appellant and Cross-Appellee, v. OWEN R. FONOROW *et al.*, Defendants-Appellees and Cross-Appellants.

Second District No. 2—02—0886

Opinion filed October 28, 2003.

John E. Norton and Thomas J. Long, both of Norton, Mancini, Weiler & DeAno, of Wheaton, and Peter M. Katsaros, of Gessler, Hughes, Socol, Piers, Resnick & Dym, Ltd., of Chicago, for appellant.

Zachary H. Lawrence, of Lawrence Law Firm, P.C., of Lisle, and Robert G. Black, of Law Offices of Robert G. Black, of Naperville, for appellees.

JUSTICE O'MALLEY delivered the opinion of the court:

Stephen Barrett, M.D., appeals from the judgment of the circuit court dismissing his complaint against Owen Fonorow and Intelisoft Multimedia, Inc. (Intelisoft). Fonorow and Intelisoft cross-appeal, challenging the circuit court's judgment granting summary judgment in favor of Barrett on their motion for sanctions under Supreme Court Rule 137 (155 Ill. 2d R. 137). We affirm both the dismissal of Barrett's complaint and the denial of Intelisoft's motion for sanctions.

Barrett alleged in his complaint that he is a medical journalist, consultant, and consumer advocate who runs a website at "www.quackwatch.com." The aims of "quackwatch" are to warn the public of "health fraud" and "unfounded medical claims" and to help the public "make educated and informed consumer decisions about healthcare practices." A common target of "quackwatch" is the practice of "alternative medicine." Fonorow is president of Intelisoft and operates a website at "www.internetwks.com," where he posts articles and other commentary. (Hereinafter Fonorow and Intelisoft are together referred to as Intelisoft.) Between January 6, 2001, and May 22, 2001, Intelisoft posted on its website 10 articles authored by Patrick "Tim" Bolen. The

articles contained several disparaging claims about Barrett, the gist of which was that he was a liar and a charlatan. Barrett alleged that Intelisoft knew or had reason to know that the disparaging remarks in the articles were false and defamatory because "[o]ther webpages and articles that Fonorow and Intelisoft have posted to their websites have had false and defamatory material about Dr. Barrett in them, and this has been brought to their attention." Barrett brought one claim of defamation and one claim of false light invasion of privacy (hereinafter false light) against Intelisoft.

Intelisoft moved to dismiss the complaint under section 2—619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9) (West 2000)). Intelisoft argued that Barrett's claims were barred by section 230 of the Communications Decency Act (Act) (47 U.S.C. § 230 (2000)), which preempts all state causes of action that would hold a "provider or user of an interactive computer service" liable as the "publisher or speaker of any information provided by another information content provider." Barrett responded that section 230 did not bar his suit because (1) Intelisoft was not a "provider or user of an interactive computer service" but an "information content provider" as those terms are defined in section 230; and (2) section 230 was intended to grant immunity only to "publishers" and Intelisoft acted not as a "publisher" but as a "distributor" in posting Bolen's articles to its website. The trial court granted Intelisoft's motion and dismissed Barrett's complaint. Afterwards, Intelisoft filed a motion for sanctions under Supreme Court Rule 137 (155 Ill. 2d R. 137), which the court denied. This appeal followed.

■ We first address Intelisoft's motion to strike Barrett's reply brief. Intelisoft argues that the reply brief violates Supreme Court Rule 341 (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(a), eff. October 1, 2001) in that it exceeds the maximum page length by four pages and its statement of facts is inappropriately argumentative at points. Intelisoft desires that we strike the whole brief or at least the offending parts. We decline to do so. "Where violations of supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted." *Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 326 Ill. App. 3d 126, 134 (2001). While we do perceive some violations of Rule 341 in the reply brief—its length being the most obvious—we decline to strike any part of it because the violations do not hamper our review of the issues. Intelisoft's motion is denied. However, we do admonish Barrett that the supreme court rules are not merely advisory and that courts do enforce them.

■ We turn now to Barrett's appeal from the trial court's judg-

ment dismissing his complaint under section 2—619(a)(9) of the Code. Generally, a motion to dismiss made under section 2—619 admits the legal sufficiency of a plaintiff's complaint but raises defects, defenses, or other affirmative matters that appear on the face of the complaint or that are established by external submissions acting to defeat the allegations of the complaint. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70 (2002). Section 2—619(a)(9) in particular allows dismissal when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2000). Immunity from suit is an "affirmative matter" properly raised under section 2—619(a)(9). *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). The "affirmative matter" asserted by the defendant must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials. *Epstein*, 178 Ill. 2d at 383. Once a defendant satisfies this initial burden of going forward on the section 2—619(a)(9) motion to dismiss, the burden then shifts to the plaintiff, who must establish that the affirmative defense asserted either is unfounded as a matter of law or requires the resolution of an essential element of material fact before it is proven. *Epstein*, 178 Ill. 2d at 383. The plaintiff may establish this by presenting "affidavits or other proof." 735 ILCS 5/2—619(c) (West 2000). If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden of going forward, the motion may be granted and the cause of action dismissed. *Epstein*, 178 Ill. 2d at 383. As in reviewing a grant of summary judgment, a court reviewing the dismissal of a complaint under section 2—619 determines *de novo* whether there is a genuine issue of material fact and whether the defendant is entitled to judgment as a matter of law. *Nichol v. Stass*, 192 Ill. 2d 233, 248 (2000).

■ In its section 2—619 motion, Intelisoft claimed that section 230 of the Act provided it immunity from Barrett's suit because the defamatory material it disseminated was created by a third party, Bolen. Section 230 "creates a federal immunity to any state law cause of action that would hold computer service providers liable for information originating with a third party." *Ben Ezra, Weinstein, & Co. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000). Section 230 provides in relevant part:

"(c) Protection for 'Good Samaritan' blocking and screening of offensive material

(1) Treatment of publisher or speaker

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) Civil liability

No provider or user of an interactive computer service shall be held liable on account of—

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1) [subparagraph (A)].

\* \* \*

(e) Effect on other laws

\* \* \*

(3) State law

Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

\* \* \*

(f) Definitions

As used in this section:

(1) Internet

The term 'Internet' means the international computer network of both Federal and non-Federal interoperable packet switched data networks.

(2) Interactive computer service

The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

(3) Information content provider

The term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230 (2000).

In passing section 230, "Congress decided not to treat providers of interactive computer services like other information providers such as newspapers, magazines, or television and radio stations, all of which

may be liable for publishing or distributing obscene or defamatory material written or prepared by others." *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998).

■ The threshold issue for our consideration is whether the trial court erred in holding that Intelisoft is a "provider or user of an interactive computer service." Barrett's sole argument on this point is that Intelisoft cannot be a "provider or user of an interactive computer service" because it is not in the business of providing access to the Internet. Barrett cites two unpublished cases to support this notion, which we find refuted by the plain text of the Act. An "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, *including specifically* a service or system that provides access to the Internet." (Emphasis added.) 47 U.S.C. § 230(f)(2) (2000). The definition includes, but is not limited to, Internet providers. See *Batzel v. Smith*, 333 F.3d 1018, 1030 (9th Cir. 2003) (noting that "services providing access to the Internet *** are only a subset of the services to which the statutory immunity applies," and citing numerous cases applying section 230 to protect interactive computer services that do not provide access to the Internet). We reject the suggestion that Intelisoft is not a "provider or user of an interactive computer service" merely because it does not provide Internet access. As Barrett offers no other reason to dispute the trial court's finding that Intelisoft is a "provider or user of an interactive computer service," we uphold that finding.

Barrett's next argument is that the trial court erred in holding that section 230 insulated Intelisoft from liability for posting Bolen's articles even though Intelisoft had reason to know that the articles contained defamatory statements. Barrett contends that Congress did not intend section 230 to insulate parties who know or have reason to know that the materials they disseminate are defamatory. Disagreeing, Intelisoft claims that section 230 precludes liability even when a party disseminates what it knows or has reason to know is defamatory material, provided the material is created by a third party.

■ Section 230(c)(1) provides: "No provider or user of an interactive computer service shall be treated as the *publisher* or speaker of any information provided by another information content provider." (Emphasis added.) 47 U.S.C. § 230(c)(1) (2000). Intelisoft suggests that, by barring a court from finding that a party acted as the "publisher" of information created by a third party, section 230 precludes liability for all intentional torts containing the element of "publication," including defamation and false light. To state a case for defamation, the plaintiff must allege: (1) the defendant made a false

statement about the plaintiff; (2) there was an unprivileged publication of the statement; and (3) the plaintiff was damaged from the publication. *Vickers v. Abbott Laboratories*, 308 Ill. App. 3d 393, 400 (1999). To state a case for the "false light" variety of invasion of privacy, the plaintiff must allege: (1) the defendant's actions placed the plaintiff in a false light before the public; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice. *Lovgren v. Citizens First National Bank of Princeton*, 126 Ill. 2d 411, 419-20 (1989). The law of false light protects a person's interest in being free from false publicity. *Lovgren*, 126 Ill. 2d at 418. "Publishing" matter for purposes of defamation and bringing that matter "before the public" or creating "publicity" differ only in degree:

> " 'Publication' *** is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public."
> Restatement (Second) of Torts § 652D, Comment *a* (1977).

To "create publicity" is simply to "publish" a matter to a wider degree than is necessary for defamation. Thus, both false light and defamation contain the element of "publication." See *Myers v. The Telegraph*, 332 Ill. App. 3d 917, 926 (2002) (when a plaintiff brings a claim for false light and defamation based on the same communication, he is permitted only a single recovery). Intelisoft concludes that, under section 230(c)(1), a "provider or user of an interactive computer service" who disseminates information "provided by another information content provider" may not be found to be the "publisher" of the information for purposes of defamation and false light. Barrett disagrees. He argues that the term "publisher" as used in section 230(c)(1) was intended, not as a reference to the "publication" element of defamation and false light, but to the "publisher/distributor" dichotomy in defamation law and to the differing standards of liability that attach to "publishers" and "distributors." The distinction Barrett invokes is widely recognized by courts and commentators:

> "[A]n entity that exercises some degree of editorial control over the dissemination of the defamatory material will be generally liable for its publication (*i.e.*, publisher liability). A newspaper, for example, may be liable for defamation if a letter to the editor that it publishes contains false and defamatory statements. Second, an

entity that distributes but does not exercise editorial control over defamatory material may only be liable if such entity knew or had reason to know of the defamation (*i.e.*, distributor liability). News vendors, bookstores, and libraries generally qualify for this standard of liability." J. Friedman & F. Buono, *Limiting Tort Liability for Online Third-Party Content Under Section 230 of the Communications Act,* 52 Fed. Comm. L.J. 647, 650-51 (2000). See also *Zeran v. America Online, Inc.,* 129 F.3d 327, 331 (4th Cir. 1997) (distinguishing between distributors and publishers and explaining different standards of defamation liability pertaining to each).

Barrett reasons that, because Congress expressly limited what manner of Internet user could be deemed a "publisher" but said nothing about distributor liability, Congress must have intended to immunize publishers but not distributors. That is, Congress partially abrogated the strict liability pertaining to publishers but left intact the fault-based liability pertaining to distributors. Accordingly, Barrett reasons, section 230 is no bar to holding liable a provider or user of an interactive computer service who, while exercising none of the traditional functions of a publisher, disseminates material originating with another information content provider that the user or provider knows or has reason to know is defamatory. Barrett suggests that Intelisoft acted as a distributor in disseminating Bolen's articles because Intelisoft exercised no editorial control over the material but merely transmitted it to the public. Intelisoft is liable, Barrett concludes, because it knew or had reason to know that Bolen's articles were defamatory.

We reject Barrett's interpretation of section 230. Barrett admits, and we have confirmed, that every state and federal court to confront the issue in a published decision has held that Congress intended section 230 to prevent the element of "publication" from being satisfied in a state tort cause of action where a provider or user of an interactive computer service disseminates information provided by another information content provider. See, *e.g., Zeran,* 129 F.3d at 332; *Patentwizard, Inc. v. Kinko's, Inc.,* 163 F. Supp. 2d 1069, 1071 (D.S.D. 2001); *Blumenthal,* 992 F. Supp. at 52; *Doe v. America Online, Inc.,* 783 So. 2d 1010, 1013-17 (Fla. 2001). Barrett's argument is premised on the notion that "publisher liability" is distinct from "distributor liability" such that Congress could have limited the former while retaining the latter. *Zeran* was the earliest case to reject this suggestion:

> "The terms 'publisher' and 'distributor' derive their legal significance from the context of defamation law. *** Because the publication of a statement is a necessary element in a defamation action, only one who publishes can be subject to this form of tort liability. ***

*** Even distributors are considered to be publishers for purposes of defamation law ***." *Zeran*, 129 F.3d at 332.

*Zeran* held that, by using the word "publisher," Congress limited courts from finding the "publication" element of defamation liability satisfied with respect to any provider or user of an interactive computer service who disseminates defamatory material provided by another information content provider, whether or not the provider or user exercised the traditional functions of a publisher in disseminating the material. According to *Zeran* and the many courts that have adopted its holding, Congress partially precluded liability for defamation under both the strict liability standard applicable to "publishers" and the fault-based standard applicable to "distributors."[1]

The parties agree that Barrett's interpretation of section 230 has been uniformly rejected in published federal decisions but disagree as to what, if any, deference we owe these cases. Barrett points to *Travelers Insurance Co. of Illinois v. Eljer Manufacturing, Inc.*, where the supreme court, declining to follow a federal circuit court case interpreting Illinois law, declared that " 'decisions of United States district and circuit courts are not binding upon Illinois courts.' " *Travelers Insurance Co. of Illinois v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 302 (2001), quoting *City of Chicago v. Groffman*, 68 Ill. 2d 112, 118 (1977). However, neither in *Groffman* nor *Travelers* was the court asked to follow a federal court's interpretation of a federal statute, as we are here. *Travelers* did, we note, also cite *Hinterlong v. Baldwin*, 308 Ill. App. 3d 441, 452 (1999), where, in interpreting a federal statute, this court remarked that "[s]tate courts are not bound to follow decisions of the federal district courts or circuit courts of appeal." However, neither *People v. Eyler*, 133 Ill. 2d 173 (1989), nor *People v. Kozlowski*, 278 Ill. App. 3d 40 (1996), the two cases *Hinterlong* cites for that proposition, was interpreting a federal statute. More relevant to the situation at hand are the several recent supreme court cases explaining the degree of deference owed by Illinois courts to federal cases interpreting federal statutes. In *Wilson v. Norfolk & Western Ry. Co.*, 187 Ill. 2d 369, 383 (1999), the court said: "The reason that federal decisions are considered controlling on Illinois state courts interpret-

---

[1]The "distributor/publisher" distinction does not exist in the law of false light. Barrett does discuss whether section 230 would bar his claim of false light if Congress intended to retain distributor liability. That issue need not concern us, however, because "publication" is an element of both false light and defamation, and thus our holding that Congress intended to bar courts from finding the "publication" element of torts satisfied in the circumstances set forth in section 230 entails that Barrett's false light and defamation claims are both barred.

ing a federal statute \*\*\* is so that the statute will be given uniform application." In *Weiland v. Telectronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 423 (1999), the court elaborated on *Wilson*'s rule, explaining:

> "This court need not follow Seventh Circuit precedent interpreting a federal statute where, as here, the Supreme Court has not ruled on the question presented, there is a split of authority among the federal circuit courts of appeals, and, we believe, the case from the Seventh Circuit was wrongly decided."

In *Sprietsma v. Mercury Marine*, 197 Ill. 2d 112, 119 (2001), the supreme court again restated *Wilson*'s rule. The court addressed whether the Federal Boat Safety Act of 1971 (FBSA) (46 U.S.C. § 4301 *et seq.* (1994)) preempted a state common-law cause of action that was based on a manufacturer's failure to install propeller guards on boat engines. Regarding federal decisions interpreting the FBSA, the court said:

> "[A]s we address the preemption issue, we will look to the decisions of federal district and circuit courts. Although we have stated in the past that the decisions of federal courts interpreting a federal statute are controlling on Illinois courts (see *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 335, (1996)), this overstates the degree of deference this court must pay to federal decisions. Thus, in [*Wilson*], we elected to follow the precedent of the Seventh Circuit with regard to its interpretation of the Federal Employer's Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (1994)), because we found the Seventh Circuit analysis to be 'reasonable and logical.' More recently, however, we declined to follow Seventh Circuit precedent in a case involving a preemption issue under FELA when there was a split of authority among the federal circuits and we believed the Seventh Circuit case was wrongly decided. See [*Weiland*, 188 Ill. 2d at 423.]
>
> Nevertheless, as we have repeatedly recognized, uniformity of decision is an important consideration when state courts interpret federal statutes. [Citations.] Uniformity is particularly important where, as here, the federal statute relates to a product that is inherently mobile and thus likely to move from state to state. Indeed, this suit was brought to recover damages in an Illinois court, under Illinois law, for a death that took place in Tennessee. Boats also frequently navigate in lakes or rivers that mark the boundary between two states. Thus, it is essential that a uniform body of law be developed. In the absence of a decision of the United States Supreme Court, which would definitively answer the question presented by this case, we elect to give considerable weight to the decisions of federal courts of appeals and federal district courts that have addressed this issue." *Sprietsma*, 197 Ill. 2d at 119-20.

After reviewing the federal cases interpreting the FBSA, the court concluded that "a finding of preemption is warranted *** in order to continue the line of uniformity laid down by the federal courts that have found preemption under the FBSA." *Sprietsma*, 197 Ill. 2d at 131.

■ At least with respect to the issue of whether its immunity applies both to publishers and distributors, section 230 has thus far enjoyed perfectly uniform application in published decisions. Every federal case to decide the issue has held that section 230 immunizes distributors as well as publishers. We defer to these decisions in order to "continue the line of uniformity," as the court in *Sprietsma* did in the face of a federal court consensus on the interpretation of the FBSA.

Last, Barrett argues that, even if section 230 is read as insulating distributors as well as publishers of defamatory statements, Intelisoft is not immune because it acted as an "information content provider" in posting Bolen's articles to its website. Section 230(c)(1) states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by *another* information content provider." (Emphasis added.) 47 U.S.C. § 230(c)(1) (2000). The adjective "another" implies that a party may rightfully claim immunity even if it is itself an information content provider so long as it did not "provide[ ]" the defamatory material at issue. See *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) ("[Section 230] would still bar Carafano's claims unless Matchmaker created or developed the particular information at issue"); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 833 n.11, 121 Cal. Rptr. 2d 703, 717 n.11 (2002) ("It is not inconsistent for eBay to be an interactive service provider and also an information content provider; the categories are not mutually exclusive. The critical issue is whether eBay acted as an information content provider with respect to the information that appellants claim is false or misleading").

■ ■ We must, then, determine whether Intelisoft acted as an "information content provider" with respect to the Bolen articles. Section 230 defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (2000). The question is whether Barrett has alleged that Intelisoft was responsible at least partially for the "creation or development" of the Bolen articles posted to its website. Clearly, he has not. Not only has Barrett failed to allege that Intelisoft contributed any original content to the Bolen articles or even edited them, he alleges nothing more than that

Intelisoft posted Bolen's articles to its website simply as it found them. Barrett cites no case law for his argument that Intelisoft acted as an "information content provider" simply by "placing the defamatory content of [its] own choosing on [its] website." There are several cases rejecting the notion that one becomes an "information content provider" of defamatory material simply by choosing it from among other materials and disseminating it without having contributed any content. See, *e.g.*, *Batzel*, 333 F.3d at 1031 (defendant website operator who disseminated third party's e-mail to members of a mailing list was not responsible for the "creation or development" of the e-mail because third party "composed the e-mail entirely on his own" and the defendant made only "minor alterations"); *Blumenthal*, 992 F. Supp. at 50 ("It is undisputed that the Blumenthal story was written by Drudge without any substantive or editorial involvement by AOL. [Citation.] AOL was nothing more than a provider of an interactive computer service on which the Drudge Report was carried, and Congress has said quite clearly that such a provider shall not be treated as a 'publisher or speaker' and therefore may not be held liable in tort"). We reject Barrett's argument that Intelisoft "provided" the content of Bolen's articles. Therefore, based on the reasons set forth above, we hold that the trial court did not err in dismissing Barrett's complaint based on the affirmative defense of immunity.

We now turn to Intelisoft's cross-appeal. Intelisoft argues that the trial court committed several errors in addressing Intelisoft's motion for sanctions under Rule 137. Rule 137 provides that the trial court may impose sanctions against a party or his counsel for filing a motion or pleading that is not well-grounded in fact or supported by existing law, lacks a good-faith basis for modification, reversal, or extension of the law, or is interposed for any improper purpose. 134 Ill. 2d R. 137. A trial court's decision to sanction a party under the rule will not be reversed on appeal absent an abuse of discretion. *Belfour v. Schaumburg Auto*, 306 Ill. App. 3d 234, 243 (1999). A trial court abuses its discretion only if no reasonable person would take its view. *Polosky v. BDO Seidman*, 293 Ill. App. 3d 414, 427 (1997). Because sanctions under Rule 137 are penal in nature, courts must apply the rule strictly (*Belfour*, 306 Ill. App. 3d at 243) and reserve sanctions for the most egregious of cases (*Amadeo v. Gaynor*, 299 Ill. App. 3d 696, 705 (1998)).

In its motion, Intelisoft alleged that Barrett's complaint lacked support in the law because his argument that section 230 insulated publishers but not distributors was "contrary to established precedent." Intelisoft further alleged that Barrett's lawsuit was filed for the improper purpose of "intimidat[ing] and harass[ing] those persons

who disagree with [Barrett's] philosophy on the issue of alternative medicine and *** caus[ing] those persons unnecessary legal expenses to defend such lawsuits." Intelisoft further alleged that Barrett has "counseled others how to avoid being sued for libel and advocated filing suit to quiet detractors," and has "publicized all of the actions he has filed, including this one in an effort to discourage further debate on the issues of alternative medicine."

Barrett moved to dismiss the motion for sanctions. After a protracted exchange of discovery motions pertaining to the sanctions request, Barrett renamed his motion to dismiss, styling it a summary judgment motion under section 2—1005 of the Code (735 ILCS 5/2—1005 (West 2000)). Barrett claimed it was "time *** for this Court to end this abuse of Rule 137 by Defendants and their counsel." Barrett remarked that summary judgment was appropriate because Intelisoft had produced "no admissible evidence of a Rule 137 violation" and had advanced "no legal authority for the 137 Motion." At the hearing on the motion, Intelisoft argued that a summary judgment motion was an improper means of contesting a motion for sanctions. Intelisoft requested an opportunity to present evidence on Barrett's motives for filing his lawsuit. The trial court denied the request. Although the trial court echoed Intelisoft's doubts regarding Barrett's means of attacking the request for sanctions, the trial court denied the request for an evidentiary hearing and granted summary judgment for Barrett on the motion for sanctions.

We note first that, although Intelisoft continues to assail, and Barrett defend, the propriety of the trial court's accepting summary judgment as a vehicle for disposing a Rule 137 motion for sanctions, Intelisoft nonetheless appears to agree with Barrett that the appropriate standard of review here is the abuse of discretion standard applicable to sanctions motions rather than the *de novo* standard applicable where summary judgment is involved (see *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998)). Therefore, we will apply the abuse of discretion standard normally applicable to motions for sanctions.

We address first Intelisoft's argument that the trial court erred in finding that Barrett's claim was supported by law. The trial court found as follows:

"In my judgment, generally the common law evolves in this very fashion. Federal statutes are—or state statutes are enacted. They are contested. The higher courts interpret those states [*sic*]. There are exceptions. Every case has a different factual basis and this is the manner in which we moved forward in our society to formulate the laws and execute the laws as the legislature has drafted them."

The trial court remarked that "this is an evolving area of the law" and "not an area where it's appropriate for a court to be sanctioning people to [sic] test the waters."

 "A court should not impose sanctions on a party for failing to conduct an investigation of facts and law before filing if he presents objectively reasonable arguments for his position, regardless of whether those arguments are unpersuasive or incorrect." *Peterson v. Randhava*, 313 Ill. App. 3d 1, 7 (2000). Intelisoft's argument against the trial court's decision is directed exclusively at its assessment of Barrett's proposed "publisher/distributor" distinction. Intelisoft argues that Barrett's construction of section 230 had no objectively reasonable basis in law at the time Barrett filed his brief because every federal court to address the issue in a published decision had rejected the interpretation. Further, reasons Intelisoft, the supreme court has clearly held that federal decisions interpreting a federal statute are binding on state courts for the purpose of maintaining uniform application of the statute. Barrett neither disputes Intelisoft's description of the state of the law at the time Barrett filed his lawsuit nor cites any supreme court cases that embrace a different degree of deference toward federal decisions interpreting federal statutes. Nonetheless, we find no abuse of discretion in the trial court's finding that Barrett's complaint had an objectively reasonable basis in law. We recognize that "Rule 137 allows sanctions when a party asserts a legal proposition that is contrary to established precedent" (*Polosky*, 293 Ill. App. 3d at 427), but we hardly can dispute the trial court's observation that the case law construing section 230, which was passed only seven years ago, has not yet yielded an established interpretation of section 230. Not all federal circuit courts have ruled on the scope of section 230's immunity. The interpretation introduced by the Fourth Circuit in *Zeran*, and now prevailing in the federal courts, has been vigorously criticized by many legal commentators as a license for defamation on the Internet that was not intended by Congress. See generally I. Ballon, *Defamation and Preemption Under the Telecommunications Act of 1996: Why the Rule of Zeran v. America Online, Inc. Is Wrong*, The Cyberspace Lawyer, July/Aug. 1997, at 6; S. Cordero, Comment, *Damnum Absque Injuria: Zeran v. AOL and Cyberspace Defamation Law*, 9 Fordham Intell. Prop. Media & Ent. L.J. 775 (1999); S. Friewold, *Comparative Institutional Analysis in Cyberspace: The Case of Intermediary Liability for Defamation*, 14 Harv. J.L. & Tech. 569 (2001); D. Sheridan, *Zeran v. AOL and the Effect of Section 230 of the Communications Decency Act upon Liability for Defamation on the Internet*, 61 Alb. L. Rev. 147 (1997); D. Wiener, *Negligent Publication of Statements Posted on Electronic Bulletin Boards: Is*

*There Any Liability Left After Zeran?*, 39 Santa Clara L. Rev. 905 (1999). Based on the statute and its historical context (examined intensively by these commentators), we, too, find it plausible that Congress did not intend blanket immunity for those who disseminate the false and defamatory statements of third parties over the Internet. We find no abuse of discretion in the trial court's finding that Barrett's interpretation of section 230 was not objectively unreasonable so as to be worthy of sanctions.

■ Intelisoft also argues that the trial court erred in refusing to conduct an evidentiary hearing on Intelisoft's claim that Barrett filed his claim for an improper purpose. Generally, a trial court should hold an evidentiary hearing before ruling on a motion for sanctions unless the merits of the motion may be assessed by an examination of the record as it already stands. *Edward Yavitz Eye Center, Ltd. v. Allen*, 241 Ill. App. 3d 562, 570 (1993). Intelisoft alleges in its motion that Barrett filed his lawsuit to silence his detractors. Significantly, however, Intelisoft does not also allege that any of the factual allegations in Barrett's complaint are false, including Barrett's claim that the Bolen articles were false and defamatory. Intelisoft, therefore, has conceded that Barrett filed his lawsuit to recover for what were in fact tortious statements. The question that remains is whether Barrett acted with an improper purpose in seeking recovery from Intelisoft. Intelisoft claims that we may infer Barrett's bad animus from the fact that he sued Intelisoft knowing that no published state or federal case had interpreted section 230 to permit tort suits against distributors like Intelisoft. The question of whether Barrett acted improperly by filing suit in the face of contrary law is a question that clearly could be resolved without an evidentiary hearing. Indeed, it is the very question we addressed above. Therefore, we find no error in the trial court's refusal to hold an evidentiary hearing on whether Barrett sued Intelisoft for an improper purpose.

■ Last, Intelisoft argues that, even if the trial court did not err in refusing to conduct an evidentiary hearing, its determination that Intelisoft failed to establish that Barrett filed his lawsuit for an improper purpose is entitled to no deference because the court failed to provide specific findings on that point. See *North Shore Sign Co. v. Signature Design Group, Inc.*, 237 Ill. App. 3d 782, 791 (1992) (the trial court is entitled to deferential review of its ruling on a sanctions motion only if it provides "explicit factual findings" to support its ruling). The trial court noted that the parties had submitted opposing affidavits on the issue of Barrett's motives and specifically found that the affidavits did not show bad faith on Barrett's part. This finding is adequately specific for us to accord it deference, and we find no abuse of discretion.

For the foregoing reasons, we affirm both the dismissal of Barrett's complaint and the denial of Intelisoft's motion for sanctions.

Affirmed.

McLAREN and BYRNE, JJ., concur.