DEAN HAMILTON, Indiv. and as a Shareholder of Hahnaman-Albrecht, Inc., Plaintiff-Appellant, v. KRISTOPHER CONLEY *et al.*, Defendants-Appellees.

Second District    No. 2—04—0455

Opinion filed April 6, 2005.—Rehearing denied May 11, 2005.

Bradley T. Koch, of Holmstrom & Kennedy, P.C., of Rockford, for appellant.

Richard A. Palmer, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for appellees.

JUSTICE KAPALA delivered the opinion of the court:

Plaintiff, Dean Hamilton, a former shareholder of Hahnaman-Albrecht, Inc. (HAI), a dissolved Illinois corporation, appeals the dismissal of his complaint against defendants HAI; Kristopher Conley (Conley), a former officer and director of HAI; and Conley Grain Company (Conley Grain) and Harmon Grain, LLC (Harmon Grain), entities that Conley allegedly controlled. Plaintiff argues that he may maintain an action alleging that, following HAI's dissolution, Conley misappropriated HAI's assets by transferring them to Conley Grain and Harmon Grain. We agree. Thus, we reverse and remand.

## I. BACKGROUND

HAI operated grain elevators in several counties throughout Illinois. The real estate on which those elevators were located and the elevators themselves were encumbered by a $5.5 million mortgage. The title to the real estate was held in a land trust, the beneficial interest of which lay with HAI. Additionally, HAI had power of direction over the land trust.

Plaintiff alleged the following facts. In late 1996 and early 1997, HAI began experiencing financial difficulties. Then, in February 1997, Conley, who was then serving as one of HAI's directors, offered a solution. Specifically, Conley proposed that the corporation make him its sole officer and director. In exchange, Conley said, he would lend or invest in HAI several million dollars from his father's trust fund. HAI's officers and directors agreed. At a special meeting on February 28, 1997, they resigned, and Conley was appointed sole officer and director of the corporation. However, time passed and the promised millions never arrived. Nor did HAI's situation improve. On May 2, 1997, HAI was involuntarily dissolved by the Secretary of State for failure to file an annual report and pay annual franchise taxes. Not three weeks after HAI's dissolution, Conley began dealing away HAI's assets. On May 19, 1997, Conley caused HAI and the land trust to enter into a lease agreement with Conley Grain, which Conley owned and controlled. The lease agreement gave Conley Grain the option of purchasing both a portion of HAI's land and a number of its grain elevators by assuming HAI's mortgage. In the four years after it entered into the lease agreement, Conley Grain entered into a number of subsequent transactions involving HAI's assets. Eventually, Conley Grain assigned all of HAI's rights to use the grain elevators and occupy the land to Harmon Grain, another company controlled by Conley. In the fall of 2001, Conley entered into several more transactions, eventually transferring all of HAI's remaining assets to Harmon Grain.

In May 2003, plaintiff filed suit, individually and as a former shareholder of HAI, against Conley, Conley Grain, Harmon Grain, and HAI.[1] Plaintiff alleged that the other former shareholders of HAI, except Conley, had authorized him to pursue the action. He sought to have all of the assets allegedly misappropriated by Conley returned to him for distribution to the other shareholders; alternatively, he sought to have his individual share of those assets returned to him. For their part, defendants filed a combined motion to dismiss pursuant to sections 2—615 (735 ILCS 5/2—615 (West 2002)) and 2—619 (735 ILCS 5/2—619 (West 2002)) of the Code of Civil Procedure. See 735 ILCS 5/2—619.1 (West 2002). Defendants argued, among other things, that plaintiff lacked standing to bring his claims and that plaintiff's claims were untimely. As to the standing issue, defendants argued that, even assuming plaintiff's allegations were true, any claim against defendants would belong to the corporation, HAI, and therefore plaintiff, as

---

[1]Although plaintiff named HAI as a defendant, he raised no claims against it. Thus, we will treat plaintiff's claims as being brought against only Conley, Conley Grain, and Harmon Grain.

a shareholder, had no standing to sue defendants. In other words, defendants argued, plaintiff's claims were derivative. As to the timeliness issue, defendants argued that section 12.80 of the Business Corporation Act of 1983 (805 ILCS 5/12.80 (West 2002)), also known as the Corporate Survival Statute (Survival Statute), limits to five years the time period after dissolution in which suits may be brought by or against a corporation. Because plaintiff's suit was filed over five years after HAI's dissolution, defendants concluded, it was time-barred. In response, plaintiff contended that his claims were individual, not derivative. Regarding the timeliness of his complaint, plaintiff pointed out that, in several situations, courts have allowed suits to go forward, notwithstanding that they were filed beyond the period allowed under the Survival Statute. The trial court dismissed plaintiff's complaint. As relevant here, the trial court found (1) that plaintiff's claims were derivative and plaintiff therefore lacked standing to bring them; and (2) that plaintiff's claims were untimely pursuant to the Survival Statute. This timely appeal followed.

## II. ANALYSIS

At the outset, we must address a motion by plaintiff to strike pursuant to Supreme Court Rule 341(e)(6) (188 Ill. 2d R. 341(e)(6)) the statement of facts appearing in defendants' brief.[2] In his motion, plaintiff contends that defendants improperly engage in argument in their statement of facts. See 188 Ill. 2d R. 341(e)(6) (noting that a brief's statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument"). We agree with plaintiff that defendants' statement of facts contains some improper argument. For example, in their statement of facts defendants attempt to persuade us to disregard plaintiff's assertions regarding the legal significance of a document entitled "Minutes of Special Meeting of Shareholders of Hahnaman-Albrecht, Inc." Contentions such as this should be reserved for the "Argument" section of a party's brief. However, we do not believe that these few improprieties require us to strike defendants' statement of facts. See *Friends of the Parks v. Chicago Park District*, 203 Ill. 2d 312, 319 (2003) ("[a]lthough we believe the plaintiffs' recitation of the facts to be generally accurate, it is certainly argumentative and in violation of the rule. While we decline to strike the plaintiffs' factual summary, we admonish counsel to be mindful in the future of the requirement to eschew argument"). Instead, we will simply disregard the offending

---

[2]We note that plaintiff's motion erroneously refers to defendants' brief as a reply brief. However, this incorrect labeling of defendants' brief does not hinder our review of plaintiff's motion.

portions of that statement. *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 997-98 (2004).

■ We now pause to set out the standard of review. Although defendants styled their motion as a combined motion to dismiss pursuant to both sections 2—615 and 2—619, we think their motion is more properly treated as a motion under section 2—619 alone. We note that, under the section 2—615 heading of their motion, defendants attacked only plaintiff's standing to bring his claims. Standing is an affirmative defense. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22-23 (2004). In a section 2—615 motion, unlike in a section 2—619 motion, a party generally may not raise affirmative matters outside of the four corners of the complaint. *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 758 (2004). Thus, notwithstanding defendants' labeling their motion to dismiss as a combined motion under both sections 2—615 and 2—619, defendants' motion to dismiss was in fact a section 2—619 motion only. "Generally, a motion to dismiss made under section 2—619 admits the legal sufficiency of a plaintiff's complaint but raises defects, defenses, or other affirmative matters that appear on the face of the complaint or that are established by external submissions acting to defeat the allegations of the complaint." *Barrett v. Fonorow*, 343 Ill. App. 3d 1184, 1189 (2003). Our review of a section 2—619 dismissal is *de novo. Barrett*, 343 Ill. App. 3d at 1189.

We turn now to an analysis of plaintiff's claims. Plaintiff argues that his claims against defendants are not derivative. Specifically, plaintiff contends that duties owed to a corporation by its directors and officers change, upon the corporation's dissolution, into duties owed directly to shareholders. Plaintiff points out that he has alleged that Conley, along with Conley Grain and Harmon Grain, engaged in misconduct after HAI's dissolution. This being the case, plaintiff concludes that he has sufficiently alleged the violation of a duty owed by Conley directly to him, as an individual shareholder. Plaintiff argues that section 12.30 of the Act (805 ILCS 5/12.30 (West 2002)) requires this conclusion.

As preliminary matter, we note that plaintiff did not raise his section 12.30 argument in the trial court. That is, in the trial court plaintiff did not argue that section 12.30 creates postdissolution duties that expose directors and officers to suits brought by shareholders in their individual capacities. Issues not raised in the trial court generally are waived and may not be raised for the first time on appeal. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004). However, the rule of waiver is an admonition to the parties and not a limitation on the jurisdiction of this court. *Dillon v. Evanston Hospital*, 199 Ill.

2d 483, 504-05 (2002). Thus, we may consider plaintiff's section 12.30 argument. *Dillon,* 199 Ill. 2d at 505.

Plaintiff's argument requires us to construe section 12.30 of the Act. Statutory construction is a question of law. *Du Page County Election Comm'n v. State Board of Elections,* 345 Ill. App. 3d 200, 206 (2003). The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People ex rel. Birkett v. City of Chicago,* 202 Ill. 2d 36, 45 (2002). Generally, the best indicator of legislative intent is the plain language of the statute. *Lulay v. Lulay,* 193 Ill. 2d 455, 466 (2000). We must evaluate the statute as a whole, with each section construed in connection with every other section. *Paris v. Feder,* 179 Ill. 2d 173, 177 (1997).

■ Plaintiff contends that, pursuant to section 12.30 of the Act, his claims against defendants are direct and not derivative. To determine whether a claim is derivative or direct, courts must focus on the nature of the alleged injury. *Small v. Sussman,* 306 Ill. App. 3d 639, 644 (1999). If the injury is incurred by the corporation only, then the shareholders can bring a derivative claim only; they may not sue as individuals. *Frank v. Hadesman & Frank, Inc.,* 83 F.3d 158, 160 (7th Cir. 1996) (applying Illinois law). Put another way, "[a] shareholder of a corporation does not acquire standing to maintain an action in his or her own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his or her corporate shares resulting from the impairment of corporate assets." 13 Ill. L. & Prac. *Corporations* § 159, at 400 (2000).

For over a quarter of a century, it has been settled law in Illinois that a claim that an officer or director has engaged in self-dealing is a claim of injury to the corporation and so must be brought derivatively. *Poliquin v. Sapp,* 72 Ill. App. 3d 477, 480 (1979). The classic example of self-dealing involves the director or officer who disposes of corporate assets for his or her personal gain. See, *e.g., Poliquin,* 72 Ill. App. 3d at 480. Here, plaintiff claims that Conley sold HAI's assets to Conley Grain and Harmon Grain. Although plaintiff admits that such claims are usually derivative, he argues that that is not the case here because Conley's alleged self-dealing occurred after HAI's dissolution. As plaintiff sees it, claims that officers or directors have engaged in misconduct after a corporation dissolves may be brought by shareholders in their individual capacities. Plaintiff finds support for this theory in section 12.30, which he argues creates postdissolution duties in officers and directors that are owed directly to shareholders as individuals, rather than to shareholders merely as members of a corporation.

Before turning to an examination of section 12.30, we note a seri-

ous preliminary flaw in plaintiff's argument. Plaintiff argues that section 12.30 creates, following dissolution, a direct duty from directors and officers to shareholders and that, in turn, this allows individual shareholders to maintain actions against directors and officers for postdissolution misconduct. Plaintiff asserts that this is so, notwithstanding that, had the misconduct occurred prior to dissolution, those actions would have been required to be brought derivatively. Starting from this premise, plaintiff concludes that he may maintain an individual action against Conley, Conley Grain, and Harmon Grain, because Conley's alleged misconduct occurred after HAI's dissolution. What is missing from this theory is an explanation of how, assuming section 12.30 creates such a direct duty in officers and directors, this allows plaintiff to maintain an individual cause of action against two outside companies, *i.e.*, Conley Grain and Harmon Grain. In other words, plaintiff has failed to explain why section 12.30, even assuming it creates the duty he alleges, gives plaintiff the right to maintain HAI's cause of action against outside parties. Thus, even assuming section 12.30 creates the duty plaintiff alleges, it would not entitle plaintiff to maintain a cause of action against either Conley Grain or Harmon Grain. However, as discussed below, section 12.30 does not create such a duty.

■ The language of section 12.30 is as follows:

"§ 12.30. Effect of dissolution. (a) Dissolution of a corporation terminates its corporate existence and a dissolved corporation shall not thereafter carry on any business except that necessary to wind up and liquidate its business and affairs, including:

(1) Collecting its assets;

(2) Disposing of its assets that will not be distributed in kind to its shareholders;

(3) Giving notice in accordance with Section 12.75 and discharging or making provision for discharging its liabilities;

(4) Distributing its remaining assets among its shareholders according to their interests; and

(5) Doing such other acts as are necessary to wind up and liquidate its business and affairs.

(b) After dissolution, a corporation may transfer good and merchantable title to its assets as authorized by its board of directors or in accordance with its by-laws.

(c) Dissolution of a corporation does not:

(1) Transfer title to the corporation's assets;

(2) Prevent transfer of its shares or securities, provided, however, the authorization to dissolve may provide for closing the corporation's share transfer books;

(3) Effect any change in the by-laws of the corporation or

otherwise affect the regulation of the affairs of the corporation except that all action shall be directed to winding up the business and affairs of the corporation;

(4) Prevent suit by or against the corporation in its corporate name;

(5) Abate or suspend a criminal, civil or any other proceeding pending by or against the corporation on the effective date of dissolution." 805 ILCS 5/12.30 (West 2002).

Nowhere in the above language appears the rule plaintiff finds there. Indeed, section 12.30 says nothing whatsoever about a duty owing from directors and officers to shareholders in their individual capacities. Plaintiff finds such a duty in section 12.30(a)(4)'s requirement that, upon dissolution, a corporation, subject to the rights of creditors, must distribute "its remaining assets among its shareholders according to their interests." 805 ILCS 5/12.30(a)(4) (West 2002). However, this merely states the general rule that, upon dissolution, a corporation's shareholders are entitled to their shares. Thus, section 12.30 does not create in directors and officers, at the moment of dissolution, a duty owed directly to shareholders in their individual capacities.

This conclusion is bolstered by reference to other sections of the Act. For example, section 8.65(3) of the Act (805 ILCS 5/8.65(3) (West 2002)) states:

"The directors of a corporation that carries on its business after the filing by the Secretary of State of articles of dissolution, otherwise than so far as may be necessary for the winding up thereof, shall be jointly and severally liable to the creditors of such corporation for all debts and liabilities of the corporation incurred in so carrying on its business."

The above language makes clear that, in the situation described, directors are liable to a corporation's creditors. Indeed, the statute expressly states as much. By contrast, section 12.30 does not expressly state that officers and directors are liable directly to shareholders for postdissolution misconduct. Surely, if the legislature wished directors to be liable to individual shareholders in such situations, the legislature would have said so, the same way it said so in section 8.65(3). That it did not is telling. After all, " '[w]here one section of a statute contains a particular provision, omission of the same provision from a similar section is significant to show different legislative intent for the two sections.' " *In re D.F.*, 208 Ill. 2d 223, 250 (2003) (Freeman, J., specially concurring, joined by McMorrow, C.J.), quoting 2A N. Singer, Sutherland on Statutory Construction § 46:07, at 202-04 (6th ed. 2000). Thus, we do not agree with plaintiff that section 12.30 creates the duty he alleges.

■ In sum, even if section 12.30 created the duty plaintiff alleges, it would not entitle him to maintain a cause of action against Conley Grain and Harmon Grain. In any event, the language of section 12.30 does not support plaintiff's reading of that section. Indeed, it makes no mention of the rule plaintiff finds there. Additionally, other sections of the Act undermine plaintiff's reading of section 12.30. Thus, we hold that section 12.30 does not permit shareholders who complain of postdissolution misconduct to *ipso facto* bring claims in their individual capacities against directors, officers or, for that matter, third parties alleged to have engaged in that misconduct.

This, however, does not end our inquiry. Plaintiff contends in his brief that shareholders have an "interest in a dissolved corporation's assets" and that this interest allows him to bring a cause of action directly instead of derivatively. Therefore, section 12.30 aside, the question remains whether, under the circumstances of this case, directors who engage in postdissolution misconduct can be liable in their individual capacities to shareholders. We think the answer to that question is yes.

■ A corporation, without question, has the right to sue directors who engage in misconduct. See, *e.g.*, *Small*, 306 Ill. App. 3d at 643. Additionally, a corporation, without question, has the right to sue third parties who engage in misconduct with respect to the corporation. See *Sinquefield v. Sears Roebuck & Co.*, 209 Ill. App. 3d 595, 597 (1991). That right to bring suit is an asset of the corporation. *Grunloh v. Effingham Equity, Inc.*, 174 Ill. App. 3d 508, 518 (1988). Like all other corporate assets, the right to bring suit devolves, following dissolution, to the corporation's shareholders, subject to the rights of its creditors. *Snyder v. State-Wide Properties Inc.*, 235 F. Supp. 733, 742 (N.D. Ill. 1964). In Illinois, the legislature has established a five-year period within which a dissolved corporation must wind up its affairs. See 805 ILCS 5/12.80 (West 2002). At the end of that five-year period, subject to the rights of creditors, a corporation's assets devolve, by operation of law, to its shareholders. See *In re Narumanchi*, 221 B.R. 311, 314 n.7 (Bankr. D. Conn. 1998) (applying Illinois law). Once that occurs, the shareholders of the corporation may bring the corporation's causes of action just as they may dispose of any other asset to which they have succeeded as owners. See *Colecchi v. Gould Title Co.*, No. 032170, slip op. at ___ (Mass. Super. October 12, 2004) (finding that, under Massachusetts law, corporate causes of action passed to shareholders at the end of three-year postdissolution period); *cf. Grunloh*, 174 Ill. App. 3d at 520-21 (holding that assignees of corporate assets acquire and may bring causes of action belonging to the assignor corporation).

■ Here, plaintiff has alleged that defendants engaged in misconduct after HAI's dissolution and prior to the completion of its winding-up period. Thus, plaintiff has alleged that the corporation had a cause of action against defendants. See *Poliquin*, 72 Ill. App. 3d at 481 (noting that a corporation's dissolution does not create individual rights of action in shareholders where the claims asserted are derivative). As a former shareholder of HAI, plaintiff succeeded to that claim five years after the corporation dissolved. 805 ILCS 5/12.80 (West 2002); *Colecchi*, slip op. at ___.

Defendants argue that there are two reasons why plaintiff cannot have standing to bring this cause of action directly. First, defendants argue that HAI's creditors have not been satisfied. Defendants point out that shareholders are not entitled to corporate assets unless and until all corporate creditors have been paid. Defendants point out that millions of dollars in unsatisfied judgments exist against HAI. Thus, defendants conclude that plaintiff cannot establish that he is entitled to any of HAI's assets, including its cause of action. We disagree.

Shareholders of a corporation are entitled to receive the corporation's assets *subject to* the rights of the corporation's creditors. *Snyder*, 235 F. Supp. at 742. In the context of a corporate cause of action, we believe this means that shareholders may pursue the action, but that any recovery they receive must in the first instance be used to satisfy any corporate creditors. This conclusion makes sense. After all, if, for example, a corporation owes its creditors $100 million and one of its directors misappropriates $200 million, the full value of the corporation's assets, the creditors may well settle the claim against the director for $100 million, *i.e.*, for the amount necessary to satisfy their own claim. Of course this would leave the shareholders with nothing. On the other hand, if the shareholders pursue the claim, they will be more likely to pursue it for its full value. That way, any recovery can be used, as it must, to satisfy the corporate creditors, and there is more likely to be something left over to distribute to the shareholders. Keeping all this in mind, we conclude that plaintiff's inability to establish that HAI's creditors have been satisfied is not fatal to his claim to any cause of action HAI may have against defendants. Instead, plaintiff may pursue such a claim, subject to the rights of HAI's creditors. *Snyder*, 235 F. Supp. at 742.

Second, defendants argue that the conclusion that plaintiff may bring HAI's cause of action cannot stand because plaintiff has no authority to act on behalf of all of HAI's former shareholders. It is true that plaintiff asserted that the other former shareholders of HAI authorized him to pursue defendants on their behalf, and that plaintiff sought to recover more than just his share of HAI's assets, that is, he

sought to recover the assets of all of HAI's shareholders. However, it is also true that plaintiff brought this action on behalf of himself individually and as a former shareholder of HAI. In other words, plaintiff in fact has not purported to bring suit on behalf of other former shareholders of HAI. Instead, he has filed suit on his own behalf only. As a former shareholder of HAI, he is entitled to do so. But he is entitled to recover proportionately to his share only.

■ The question remains, however, whether plaintiff's efforts to bring that claim are untimely under the Survival Statute. As noted, the Survival Statute requires that a corporation wind up its affairs within five years of its dissolution. 805 ILCS 5/12.80 (West 2002). Additionally, the Survival Statute limits to five years the time following a corporation's dissolution in which it may sue or be sued. 805 ILCS 5/12.80 (West 2002). As the court in *Grunloh* implicitly recognized, this time limit applies to corporate claims, even though they may have been transferred to the corporation's assignees or devolved to its shareholders. *Grunloh*, 174 Ill. App. 3d at 522 (considering whether assignees' amended complaint related back to complaint filed within survival period, "so as to render the assertion of the corporate claims timely within the meaning of [the Survival Statute]").

Here, plaintiff brought his claim more than five years after HAI's dissolution. Thus, even assuming he succeeded to ownership of HAI's cause of action, plaintiff's complaint would be untimely under the above general rule. However, Illinois courts have recognized that equitable considerations sometimes counsel against rote application of the Survival Statute. See, *e.g.*, *Moore v. Nick's Finer Food, Inc.*, 121 Ill. App. 3d 923, 926-27 (1984) (holding that, where plaintiff was a minor at the time of the alleged injury, action could be maintained within two years of plaintiff's reaching majority, notwithstanding that that occurred beyond survival period); *Edwards v. Chicago & Northwestern Ry. Co.*, 79 Ill. App. 2d 48, 55 (1967) (holding that action could be brought beyond survival period where defendant fraudulently induced plaintiff to refrain from filing action within survival period). This case presents such a situation. Plaintiff has alleged that defendant waited until shortly before the close of the five-year winding-up period to engage in misconduct with respect to corporate assets. If we were to conclude that the Survival Statute bars plaintiff's claims, then officers and directors could, by waiting to do their misdeeds near the end of the winding-up period, avoid liability altogether. That is to say, shareholders could succeed to ownership of the corporation's cause of action on the same day it became time-barred under the Survival Statute. We decline to find that the Survival Statute requires such a result. See *People v. Effler*, 349 Ill. App. 3d

217, 219 (2004) ("A court should not construe a statute in a manner that would lead to consequences that are absurd, inconvenient, or unjust"); see also *Shute v. Chambers*, 142 Ill. App. 3d 948, 954 (1986) (declining to apply Survival Statute when "allowing a corporate survival statute to be applied to this type of claim would result in barring former shareholders from enforcing rights to corporate assets at the same time they succeeded to ownership of the assets by operation of law").

## III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court of Carroll County and remand the cause.

Reversed and remanded.

O'MALLEY, P.J., and HUTCHINSON, J., concur.