McKEAGUE, Circuit Judge,
dissenting.
The majority may accurately assess the merits of the parties’ arguments, however, the majority misses one key point: do the plaintiffs' have standing? I think not and respectfully dissent from the majority’s analysis.
A statute that has been bandied about periodically throughout the litigation but never given much attention is Dlinois’s corporate survival statute: 805 Ill. Comp. Stat. 5/12.80. It reads as follows:
The dissolution of a corporation ... by the issuance of a certificate of dissolu *820 tion in accordance with Section 12.40 of this Act ... shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution.
The Seventh Circuit has explained the significance of this statute as follows: Under the common law a corporation’s capacity to sue or be sued terminated when the corporation was legally dissolved. 16A W. Fletcher, Cyclopedia of the Law of Private Corporations § 8142 (1979 Rev. Vol. Richard P. Eickhoff). Today, however, the harshness of the common law on creditors and shareholders has been replaced in every state by statutes which extend the corporate life for a definite time for the purpose of prosecuting and defending suits. However, where a statute continues the existence of a corporation for a certain period, it is generally held that the corporation becomes defunct upon the expiration of such period, at least in the absence of a provision to the contrary, so that no action can afterwards be brought by or against it and must be dismissed. 16 Fletcher, supra, § 8144.
Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co., 629 F.2d 1188, 1185 (7th Cir.1980).
The survival statute applies both to suits brought by the corporation or its shareholders and suits brought against them. Since the Plaintiffs in this case filed suit well after the five-year survival period had expired, their claim was extinguished unless it falls within one of two exceptions to the statute. The first exception, which clearly does not apply here, is for actions brought to enforce a promissory note or other similar corporate asset that passes to shareholders after dissolution as a matter of law. See Sharif v. Int’l Dev. Grp. Co., Ltd., 899 F.3d 857, 861-62 (7th Cir.2005). The second exception is for actions that can be brought by shareholders directly rather than as derivative claims. See id. at 861. Only derivative claims are limited by the five-year survival period. Id. To determine whether the Plaintiffs’ claim is properly categorized as direct or derivative requires consideration of the Shareholder Standing Rule.
The Shareholder Standing Rule “is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation’s management has refused to pursue the same action for reasons other than good-faith business judgment.” Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd., 493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990). The rule implicates the nonconsti-tutional prudential component of standing rather than the Article III case-or-controversy component. See id. at 335-36, 110 S.Ct. 661. It ensures that the plaintiff is “asserting] his own legal rights and interests” and is not “rest[ing] his claim to relief on the legal rights or interests of third parties.” Id. at 336, 110 S.Ct. 661 (quotation omitted). The use of the word “standing” has been considered a “misnomer” in this context because the rule is concerned not with “standing (in the sense that the complaint does not allege a ‘case or controversy5 justiciable under Article III) but the identity of the real party in interest.” Frank v. Hadesman and Frank, Inc., 83 F.3d 158, 159 (7th Cir.1996); see also Fed.R.Civ.P. 17(a) (“An action must be prosecuted in the name of the real party in interest.”).
Although shareholders cannot sue in their individual capacities to enforce the *821 corporation’s rights, “[t]here is an exception to [the] rule allowing a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation’s rights are also implicated.” Franchise Tax Bd., 493 U.S. at 336, 110 S.Ct. 661. Since Adtech was incorporated in Illinois, Illinois law governs its shareholders’ ability to sue. Frank, 83 F.3d at 169. The court in Frank summarized Illinois law as follows:
Illinois follows the widespread rule that an action for harm to the corporation must be brought in the corporate name. When investors have been injured in common, they must continue to act through their collective — the corporation .... Injury to the corporation does not, however, prevent suit by an investor who suffers a distinct personal injury— for example, a shareholder who alleges that members of the board have refused to return stock pledged to secure a debt, even after the loan has been paid; or a shareholder-employee who contests his discharge from employment.... The American Law Institute’s Principles of Corporate Governance: Analysis and Recommendations § 7.01 (1992), captures this nicely: “An action in which the holder [i.e. the investor] can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action.... An action in which the holder can prevail without showing an injury or breach of duty to the corporation should be treated as a direct action that may be maintained by the holder in an individual capacity.”
Id. at 160. Illinois courts say that to determine whether an action is derivative, the court must “determine if the ‘gravamen’ of the pleadings states injury to the plaintiff upon an individual claim as distinguished from an injury which indirectly affects the shareholders or affects them as a whole.” Zokoych v. Spalding, 36 Ill. App.3d 654, 344 N.E.2d 805, 813 (1976). The bottom line is that if a plaintiff has been injured directly he can bring a direct action to rectify that harm; but if he has been injured indirectly as a shareholder he must bring a derivative action.
So how were the Plaintiffs harmed here, directly or indirectly? Before determining how they were injured it is important to nail down exactly when they were injured. The Plaintiffs were not injured when the assignment of the patent failed. Rather, they were injured when Adtech was dissolved. After the dissolution occurred, their injury was complete, and the Plaintiffs suffered no further injury from the subsequent unsuccessful assignment. The only entity that could possibly have been harmed by the unsuccessful assignment was the corporation because it was the only entity that was ever supposed to receive the patent in the first place. The unsuccessful assignment of the patent really carries very little significance in this case. Rather, the dissolution is the important event.
The reason it appears at first glance that the unsuccessful assignment injured the plaintiffs results from the magnitude of the transaction. Imagine that instead of purporting to assign a patent worth millions, Davidson had instead signed a rental agreement to lease some office space in the corporation’s headquarters for his personal use. If Davidson later disclosed that the rental agreement was invalid and tried to back out, would the Plaintiffs now maintain that they were injured when the rental agreement was signed? Almost certainly not. Everyone would recognize that their injury occurred when the corporation dissolved.
Just so under these facts. The factual magnitude of the transaction should not be *822 allowed to obscure the legal realities of the situation.
After determining that the Plaintiffs were injured when the corporation was dissolved, it is then possible to figure out how they were injured — directly or indirectly? [1] Clearly indirectly. The corporation suffered a direct injury because it ceased to exist; the Plaintiffs were harmed indirectly because at that point they held shares in a company that was no longer a going concern and, not surprisingly, shares in a dissolved company are worth less than shares in an undissolved one. See Cashman v. Coopers and Lybrand, 251 Ill.App.3d 730, 191 Ill.Dec. 317, 623 N.E.2d 907, 911 (1993).
Because the Plaintiffs were harmed only indirectly, their claim must be categorized as derivative. As a derivative claim, it is covered by the survival statute and, not having been brought within the requisite five years, was extinguished and should have been dismissed. This case, in which the litigation began nine years after dissolution and is still dragging on over twenty years after dissolution, aptly illustrates one of the reasons for the five-year limit in the survival statute, which is to establish “ ‘a definite point in time at which the existence of a corporation and the transaction of its business are terminated. To allow ... the continued prosecution of lawsuits perverts the definiteness and orderly process of dissolution so as to produce a continuous dribble of business activity contrary to the intent of the winding up provisions of the statute.’” Canadian Ace *823 Brewing, 629 F.2d at 1190 (quoting Bishop v. Schield Bantam Co., 293 F.Supp. 94, 96 (N.D.Iowa 1968)). The fact that the dissolution in this case was not known to or intended by the shareholders does not make a definite period for filing suit any less important. Other companies need to know when they can safely acquire assets that were owned at one time by a corporation that dissolved, without worrying about the threat of a lawsuit brought by former shareholders of the erstwhile corporation.
I respectfully dissent.

. This analysis is inconsistent with a case from the Illinois Court of Appeals. See Hamilton v. Conley, 356 Ill.App.3d 1048, 293 Ill.Dec. 68, 827 N.E.2d 949, 952-53 (2005). In Hamilton, after a corporation was dissolved its sole officer and director dealt away the corporation's assets to two companies he controlled. 356 Ill.App.3d 1048, 293 Ill.Dec. 68, 827 N.E.2d 949, 952-53 (2005). Six years after dissolution, a former shareholder sued the director and his two companies. Id.., 293 Ill.Dec. 68, 827 N.E.2d at 953. The court concluded that the shareholder’s cause of action was derivative, but it also concluded that the cause of action was a corporate asset which devolved to the shareholders by operation of law after the five-year survival period expired. Id., 293 Ill.Dec. 68, 827 N.E.2d at 957-58. After determining that the shareholder had the right to bring the claim in his individual capacity, the court next analyzed whether that claim was untimely under the survival statute. Id., 293 Ill.Dec. 68, 827 N.E.2d at 959. It determined that "equitable considerations” "counselled] against rote application of the Survival Statute” because the director "waited until shortly before the close of the five-year winding-up period to engage in misconduct with respect to corporate assets.” Id., 293 Ill.Dec. 68, 827 N.E.2d at 960.
Hamilton, however, is a poorly reasoned case and I decline to follow it. First, by essentially concluding that all inchoate causes of action devolve to shareholders after dissolution, Hamilton ignored the careful distinction noted by the Seventh Circuit between claims "based on 'a debt of which the fixed amount could be ascertained’ " (e.g. a promissory note) and a "traditional breach of contract claim.” Sharif, 399 F.3d at 861-62 (quoting Shute v. Chambers, 142 Ill.App.3d 948, 97 Ill.Dec. 92, 492 N.E.2d 528 (1986)). The former type of claim devolves to shareholders as a corporate asset as a matter of law and can be brought after the survival period expires. The latter type of claim does not devolve to shareholders and is subject to the survival period. Ignoring this distinction, as the court did in Hamilton, "would effectively nullify the Illinois corporate survival statute,” id. at 862, since it would mean that all causes of action pass to shareholders after a corporation dissolves.
Furthermore, after concluding that the cause of action could be brought directly by a shareholder, the Hamilton court then proceeded to apply the survival statute. Hamilton, 293 Ill.Dec. 68, 827 N.E.2d at 959. But as the Seventh Circuit pointed out, the survival statute does not apply to direct claims brought by shareholders. Sharif, 399 F.3d at 861. After determining that the shareholder could sue directly, the Hamilton court should not have proceeded to analyze whether the claim was timely under the survival statute. Accordingly, I decline to follow Hamilton.